The **UNITED STATES**, Appellant,

v.

**JOHN V. CARR AND SON, INC.,**
Appellee.

Customs Appeal No. 5525.

United States Court of Customs
and Patent Appeals.

May 16, 1974.

Irving Jaffe, Acting Asst. Atty. Gen., Walter H. Fleischer, Anthony J. Steinmeyer, Washington, D. C., for the U. S.

Barnes, Richardson & Colburn, New York City, attorneys for appellee. E. Thomas Honey and Peter J. Fitch, New York City, of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE, and MILLER, Judges.

BALDWIN, Judge.

This appeal is from the decision and judgment of the Customs Court, Third Division, sustaining appellee's protest concerning the classification of certain fish hooks and their tin containers. The opinion of the Customs Court appears at 69 Cust.Ct. 78, C.D. 4377, (1972). The court held that the fish hooks qualified for duty-free entry under item 800.00,

TSUS, as returned American products which had not "been advanced in value or improved in condition by any process of manufacture or other means while abroad."

After a thorough consideration of appellant's arguments, we have concluded that we are in full agreement with the opinion of the Customs Court, and we adopt it as our own. The judgment is affirmed.

MILLER, Judge (dissenting).

I am persuaded that the involved merchandise, having been assembled abroad from bulk into individually-packaged assortments of forty hooks of eight different kinds each to meet the requirements of retail purchasers in this country, was substantially advanced in value and did not, therefore, qualify for classification under Schedule 8, Part 1, Subpart A, item 800.00, which provides as follows:

> 800.00  Products of the United States when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means while abroad.  ................. Free

I agree with appellant that the holding of the Customs Court effectively reads out of the statute the broad phrase "or other means," as does the majority here. I further agree that the test under item 800.00 is economic (advanced in value) and not merely physical (improved in condition), and that appellee did not sustain its burden of proving that the involved merchandise was not advanced in value or improved in condition by manufacture or other means. As discussed below, the words "other means" were used by the Congress for the purpose of limiting the duty-free entry of merchandise to compete with domestic industry and labor. Liberalizing the tariff laws by expanding the duty-free provisions is a Congressional prerogative.

The phrase "or other means" has been in item 800.00 and its predecessor provisions since the Tariff Act of 1890, enacted by the 51st Congress. It originated during the 50th Congress as an amendment by the Senate Finance Committee to a House-passed bill (H.R. 9051).[1] Under the free list, the House bill had provided:

> Articles the growth, produce, and manufacturer of the United States, when returned after having been exported, without having been advanced in value by any process of manufacturer or by labor thereon; . . . .

As amended by the Senate Finance Committee, the provision read:

> Articles the growth, produce, and manufacturer of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; . . . .

Thus, the Committee *added* the physical test, "or improved in condition," and replaced the words "by labor thereon" with "other means," obviously a broader phrase which would include labor.

The Senate passed the amended H.R. 9051 on January 22, 1889. The House failed to act, and the bill died at the end of the 50th Congress, April 2, 1889.

The 51st Congress commenced December 2, 1889, and the follow-on legislation to the above-referred to H.R. 9051 was introduced by the House Ways and Means Committee as H.R. 9416 on April 16, 1890. The new bill contained the above-quoted provision as amended by the Senate, and there was no attempt to change it as the bill progressed through the two houses and was finally enacted October 1, 1890, as the Tariff Act of 1890.[2]

---

1. S.Rep. 2332, 50th Cong. 1st Sess. (1888). The report stated that the House bill had been given a "thorough examination" and that the Committee was "convinced of its inadequacy."

2. S.L.Vol. 26, Ch. 1244 (1890).

It should be noted that during the 50th Congress, the Senate was in control of those favoring more protection, and the House was in control of those favoring less protection to domestic industry. The protective tariff was a principal issue in the elections of 1888, with those favoring more protection winning control of both the Senate and the House.[3] Thus, the legislative history of the words "other means" makes it clear that protection of domestic industry and labor was intended; also that the test for free entry was not merely the physical "improved in condition," but, alternatively, the economic "advanced in value" as well. Not only is the intent of Congress clear, but the words expressing that intent are clear.

Appellee cites Border Brokerage Co. Inc. v. United States, 65 Cust.Ct. 50, C. D. 4052, 314 F.Supp. 788 (1970), relied upon by the Customs Court in its opinion. The case involved 40-pound cartons of tomatoes grown in Florida which were shipped by rail to Canada. There the tomatoes were unloaded, sorted, graded, repacked in 18-pound cartons, and then imported into the United States where they were sold. It seems clear that the repacking was for purposes of *wholesale*. The Customs Court held that the treatment given the tomatoes in Canada did not advance their value or improve their condition. Whether individual wrapping of the tomatoes would have made a difference in the court's decision cannot be determined, but it may be significant that the court noted that no cleaning, wiping, or individual wrapping was involved. In any event, the court said:

> Hence, it would appear from the principles evolved in the Hallauer and Oakville cases, that the test to be

applied in item 800.00 cases is whether the merchandise of American origin has itself (apart from its container) been the object of advancement in value or improvement in condition while abroad.

The case of Hallauer v. United States, 40 CCPA 197, C.A.D. 518 (1953), involved apples transported in 35-pound boxes to Canada, where they were wiped (to remove an insecticide spray residue), polished, graded and wrapped. They were returned to the United States in 42-pound boxes. Obviously wholesale prices were involved both ways. This court held that the treatment given the apples was sufficient to convert the apples per se into a different unit of merchandise and constituted "alterations" within the meaning of paragraph 1615(g) of the Tariff Act of 1930.[4] We are not here concerned with "alterations," so this case is inapposite.

The case of United States v. Oakville Company, 402 F.2d 1016, 56 CCPA (1968), involved common pins which were exported in bulk to Canada, along with one-inch wide paper tape rolls 17 or 18 inches in diameter. In Canada the paper tape and the pins were used to make new rolls, 5,000 pins to the roll, 5¾ inches in diameter, wound on wooden spools made in Canada. The new rolls were returned to the United States for use by one of Oakville's customers in ticketing machines which attached price tags to garments. The government argued that the pins underwent a manufacturing process in Canada and that what was imported was a different commercial entity from what was exported, citing the case of Winthrop-Stearns, Inc. v. United States, 38 Cust.Ct. 1, C.D. 1835 (1956).[5] This court agreed that

---

3. United States Tariff Commission, THE TARIFF AND ITS HISTORY, U. S. Government Printing Office, 1934.

4. This paragraph provided: "Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which

would apply to the article itself in its repaired or altered condition . . . ."

5. In that case medicinal tablets were sent to Canada in bulk. There they were bottled, 100 tablets per bottle, labeled, and the bottles packed in individual containers. The Customs Court said it was apparent that the merchandise was bottled to make it readily

what was imported was "a different commercial entity" and said that "from the standpoint of commercial reality" the paper tape and the pins had been consumed in making "an entirely different article" ("pins-in-rolls"), so that their value as an article of commerce per se had been destroyed, not advanced. It concluded that the "pins-in-rolls" must be assessed with duty as an entity, but that the paper tape and the pins were entitled to free entry as American goods returned and that their value should be subtracted from the total value of the pins-in-rolls.

Unlike the *Oakville Company* case, we do not have before us a situation in which the exported fish hooks were "consumed" in making a different article which itself is to be assessed with duty, so a holding here that appellee has not sustained its burden of proving that the fish hooks were not *advanced in value* or improved in condition by manufacture or *other means*, as required by the statute, would not be in conflict with out holding there. We are not, of course, bound by the Customs Court's holding in *Winthrop-Stearns* or, for that matter, *Border Brokerage*, but I can see no reason why *Winthrop-Stearns* would not be citable as precedent for reversal in this case. As appellant points out, some six years after the decision in that case, Congress enacted the Tariff Schedules of the United States. It is presumed that it did so with full knowledge of the decision, and reenactment of the American-goods-returned provision without change is persuasive that Congress intended the *Winthrop-Stearns* construction of the statute to continue. See Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965).

The decision of the Customs Court should be reversed and the case remanded inasmuch as the court did not consider the question of alternative classification under item 807.00.

---

available to the ultimate consumer and that it was converted from tablets per se into a different unit of merchandise or article of trade "undoubtedly of greater commercial value." The court held that the tablets in bottles were not entitled to free entry as goods returned without having been advanced in value or improved in condition.