**CERAMICA REGIOMONTANA, S.A., Plaintiff,**

v.

**UNITED STATES, et al., Defendants,**

**Tile Council of America, Inc., Intervenor.**

**Court No. 82-11-01497.**

United States Court of International Trade.

Jan. 26, 1983.

Stein Shostak Shostak & O'Hara, Washington, D.C. (Irwin P. Altschuler, Steven P. Kersner and David R. Amerine, Washington, D.C., of counsel), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Lit. Branch, and A. David Lafer, Washington, D.C., for defendants.

Howrey & Simon, Washington, D.C. (Kevin P. O'Rourke, David C. Murchison and John F. Bruce, Washington, D.C.), for intervenor.

NEWMAN, Judge:

### Introduction

This action raises a first impression question of vital concern in the administration of our countervailing duty law.

Plaintiff seeks an order in the nature of mandamus compelling the International Trade Administration of the United States Department of Commerce ("ITA") to reduce the estimated countervailing duty cash deposit rate on imports of ceramic tile from Mexico.[1] These estimated duties are being collected in accordance with a countervailing duty order and underlying final affirmative countervailing duty determination published by ITA on May 10, 1982 (47 FR 20012).

Defendants and intervenor[2] have filed cross-motions to dismiss this action on the

---

1. Plaintiff's application for a writ of mandamus was brought on by way of a motion for an order to show cause why mandamus should not issue, filed simultaneously with the complaint on November 5, 1982. The order to show cause was granted on November 15, 1982 and oral argument was held on November 23, 1982.

2. The Tile Council of America, Inc. was permitted to formally intervene in this action pursuant to its motion by an order of this Court dated December 13, 1982. See 4 CIT ——, Slip Op. 82–113 (December 13, 1982). However, intervenor was accorded the opportunity to participate in the oral argument on November 23, 1982 in view of its pending motion for intervention in the case and its previous intervention in a related action, Court No. 82–6–00857.

grounds that the Court lacks subject matter jurisdiction, and that plaintiff has failed to state a claim upon which relief can be granted.

On November 23, 1982, pursuant to plaintiff's request, oral argument was heard in this matter; and, subsequent to the oral argument, the parties submitted additional legal memoranda in connection with the pending motion to dismiss, the last of which was filed with the Court on January 7, 1983.

For the reasons set forth hereinafter, I conclude that the Court has subject matter jurisdiction, but that plaintiff has failed to state a claim upon which relief can be granted.

### Background

On May 10, 1982 ITA published notice of its final affirmative countervailing duty determination and countervailing duty order regarding imports of ceramic tile from Mexico (47 FR 20012). ITA's final determination established a single countervailing duty deposit rate applicable to all ceramic tile imported from Mexico at 15.84 percent of the f.o.b. value of the imported merchandise. More, ITA's order directed the Customs Service to require the posting of a cash deposit equal to the estimated countervailing duty specified in the final affirmative countervailing duty determination. The 15.84 percent duty rate included a 10 percent ad valorem deposit rate to offset benefits provided under the Mexican Government's Certificado de Devolucion de Impuesto ("CEDI") program. Two other programs, "FOMEX" and "CEPROFI", were also found by ITA in its final determination as countervailable subsidies equal to .09 percent and 5.75 percent ad valorem, respectively. In short, ITA's countervailing duty order required that estimated countervailing duties be deposited for imports of ceramic tile from Mexico in the amount of 15.84 percent ad valorem—the total of the net subsidies under the CEDI, FOMEX and CEPROFI programs. Customs officers were further directed to continue suspension of liquidation of all entries covering ceramic tile from Mexico.

Subsequent to the publication of ITA's final determination and order, plaintiff filed an action in this Court (Court No. 82-6-00857) challenging ITA's countervailing duty determination, including the manner in which the countervailing duty rate for CEDI was calculated. That suit is currently *sub judice.*

It appears that on August 25, 1982 the Government of Mexico published an executive order in the Mexican Government's *Diario Oficial* (Official Gazette) announcing that it was terminating the list of products eligible for CEDI benefits.[3] The list included ceramic tile and other products eligible for CEDI benefits.

In light of its August 25th decree, the Mexican Government officially requested ITA, on August 30, 1982, to reduce the 15.84 percent countervailing duty deposit rate applicable to Mexican ceramic tile to 5.84 percent (viz, to eliminate the 10 percent countervailing duty based upon CEDI).

By letter dated September 1, 1982, plaintiff also requested ITA, *inter alia,* to immediately reduce the countervailing duty rate regarding ceramic tile to eliminate the 10 percent countervailing duty based upon CEDI. Plaintiff applied for this immediate reduction in the countervailing duty deposit requirement on the basis of the similar previous action taken by ITA in *"Certain Iron Metal Castings From India; Adjustment of Countervailing Duty Deposit Rate"*, 46 FR 38398, July 27, 1981. There, ITA reduced the estimated countervailing duty deposit rate respecting an Indian subsidy program, notwithstanding that review under section 751 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675, had not been completed. In essence, plaintiff requested that ITA take the same interim action on its behalf as was previously taken by ITA in the *India* case.

---

**3.** There is a dispute between the parties as to whether the effect of the executive order was to "suspend" the CEDI program or to "abolish" the program. In view of the conclusions reached herein, it is unnecessary to address that issue.

On October 25, 1982, ITA denied plaintiff's request, advising that no adjustment would be made to the countervailing duty rate until the completion of the first full administrative review conducted under section 1675. Thereupon, plaintiff filed this action contesting the denial of its request, and now seeks an order of mandamus compelling ITA to "forthwith" adjust the countervailing duty deposit rate for ceramic tile from Mexico by reducing that rate to 5.84 percent ad valorem to reflect the "termination" of CEDI benefits.

*Jurisdiction*

We first address the jurisdictional issue.

Plaintiff predicates the Court's subject matter jurisdiction over this action on 28 U.S.C. § 1581(i), which so far as pertinent, provides:

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section * * * the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to its paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

Plaintiff contends that the foregoing residual provision confers jurisdiction upon the Court to hear the instant case inasmuch as the contested ITA decision not to grant an interim reduction in the estimated countervailing duty deposit rate for ceramic tile from Mexico involves the administration of the United States countervailing duty law, and since such contested decision did not arise out of any proceeding which would result in a determination for which judicial review is provided under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c). There is no dispute that the Court lacks jurisdiction under sections 1516a and 1581(c).

Defendants and intervenor argue that jurisdiction in the present case under section 1581(i) is precluded by the legislative history of that provision and prior judicial construction. Specifically, defendants and intervenor argue that assertion of jurisdiction under section 1581(i) would circumvent the specific statutory scheme of judicial review for antidumping and countervailing duty cases in section 1516a; that section 1581(i) does not create any new causes of action; that preliminary determinations not specified as reviewable in section 1516a are reviewable only in connection with the final determination which directly or by implication incorporates or supersedes the preliminary administrative action; that here, the final results of administrative review under 19 U.S.C. § 1675 will either supersede or incorporate any questions raised by plaintiff regarding any necessary adjustment of the current countervailing duty rate, and therefore plaintiff can obtain judicial review only after ITA publishes its final results of administrative review; and that section 1581(i) is not an alternative source of jurisdiction in this case since an action commenced pursuant to that provision is not subject to the same standing requirements (28 U.S.C. § 2631), statute of limitations (28 U.S.C. § 2636), burden of proof (28 U.S.C. § 2639) or scope of review (28 U.S.C. § 2640) as an action brought pursuant to 28 U.S.C. 1581(c), which covers determinations specified in section 1516a.

Clearly, ITA's denial of plaintiff's request for an interim adjustment of the estimated countervailing duty deposit rate on ceramic tile from Mexico is not a determination specified in section 1516a; nor is ITA's decision a preliminary or interlocutory administrative action that in the course of proceeding will be directly or by implication incorporated in or superseded by any final determination.

■ Respecting the jurisdictional issue, the crucial fact is that ITA's decision was *not* made during any proceeding that would culminate in a determination for which judicial review is provided under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c). The contested decision in this case was made after the final countervailing duty determination and outside the scope of proceedings under 19 U.S.C. § 1675. Simply put, plaintiff now seeks an immediate pre-annual review adjustment of the estimated countervailing duty rate. Such interim immediate adjustment cannot, of course, be accorded to plaintiff after the completion of a section 1675 review. Therefore, it cannot be said that ITA's decision denying plaintiff's request for an interim adjustment will be subsumed in the section 1675 final determination, which is contestable under section 1516a.

Since the contested ITA decision was made outside the scope of any administrative proceeding which ultimately would result in a determination reviewable under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c), obviously this is the circumstance in which Congress intended that the Court's residual jurisdiction could be invoked. As stated by the House Judiciary Committee in H.R.Rep. No. 96–1235, 96th Cong., 2d Sess., 48 (1980):

The Committee intends that any determination specified in section 516A of the Tariff Act of 1930, or any preliminary administrative action which, in the course of proceeding, will be, directly or by implication, incorporated in or superseded by any such determination, is reviewable exclusively as provided in section 516A. For example, a preliminary affirmative antidumping or countervailing duty determination or a decision to exclude a particular exporter from an anti-dumping investigation would be reviewable, if at all, only in connection with the review of the final determination by the administering authority or the ITC.

*However, subsection (i), and in particular paragraph (4), makes it clear that the court is not prohibited from entertaining a civil action relating to an antidumping or countervailing duty proceeding so long as the action does not involve a challenge to a determination specified in section 516A of the Tariff Act of 1930.* [Emphasis added.]

Defendants and intervenor emphasize those portions of the Judiciary Committee's Report which mention ‐ that Congress did not intend the residual provision to be utilized to circumvent the statutory scheme of judicial review in section 1516a, but turn a blind eye to that portion of the report quoted *supra.* The latter portion clearly manifests a Congressional intent that a countervailing duty action may be predicated upon section 1581(i) "so long as the action does not involve a challenge to a determination specified in Section 516A of the Tariff Act of 1930". Hence, the instant case is precisely such an action as was contemplated by the foregoing statement in the report of the House Judiciary Committee.

In prior holdings the Court has recognized a proper sphere for section 1581(i) jurisdiction in countervailing duty cases. Thus, in *Royal Business Machines, Inc. v. United States,* 1 CIT ——, Slip Op. 80–16, 507 F.Supp. 1007 (1980), *aff'd* 69 CCPA ——, 669 F.2d 692 (1981), Judge Watson made this prescient comment:

The court notes that the dismissal is not grounded on the basis urged by the defendant, i.e., that the action under 19 U.S.C. 1516a is the exclusive remedy for all grievances arising from the administration of the antidumping law. For this grievance the action under 19 U.S.C. 1516a was an adequate remedy. *However, it is not difficult to foresee that certain grievances may arise between the final determinations and the administrative review of the final determinations, under 19 U.S.C. 1675 for which 19 U.S.C. 1516a would be manifestly inadequate.* In those instances, the right of action under 5 U.S.C. 702 and the *Court's broad residual jurisdiction under 28 U.S.C. 1581(i) will serve to maintain the comprehensive system of judicial review established by the legislature.* [Emphasis added.]

Consequently, in *Royal Business Machines,* the Court anticipated an action such as the present one wherein the contested administrative decision arose between the final determination and an administrative review, in which situation the plaintiff may properly invoke the Court's broad residual jurisdiction under section 1581(i). Also *cf.: Sacilor Acieries et Laminoirs de Lorraine v. United States,* 3 CIT ——, Slip Op. 82–43, 542 F.Supp. 1020 (1982); and *Krupp Stahl AG v. United States,* 4 CIT ——, Slip Op. 82–112, 553 F.Supp. 394 (1982).

The cases relied upon by defendants and intervenor are readily distinguishable. In *Haarman & Reimer Corp. v. United States,* 1 CIT ——, Slip Op. 81–13, 509 F.Supp. 1276 (1981), Judge Boe held that a negative preliminary determination by ITA regarding "critical circumstances" is outside the scope of contestable decisions under 19 U.S.C. § 1516a, and was not final agency action. Furthermore, in *PPG Industries v. United States,* 2 CIT ——, Slip Op. 81–85, 525 F.Supp. 883 (1981), plaintiff brought suit under 28 U.S.C. § 1581(i) seeking a Writ of Mandamus directing ITA to hold a disclosure conference *during* an administrative review conducted by ITA in conformance with 19 U.S.C. § 1675. Judge Rao held that the Court had no jurisdiction over the action under section 1581(i) since ITA's decision was "an interlocutory procedural decision reviewable under a section 516A review of the final results of the section 751 administrative review and should not be reviewed by this court at this time".

Significantly, in *Haarman & Reimer Corp. v. PPG Industries,* wherein the Court found that it had no jurisdiction, the contested decisions arose out of pending administrative proceedings in which the final determination therein would incorporate or supersede the contested decisions. *Cf. Roquette Freres and Roquette Corporation v. United States,* 4 CIT ——, Slip Op. 82–76 (September 15, 1982). Here, however, as we have observed, the contested decision of October 25, 1982 by ITA was not made in the course of a review under section 1675 or any other administrative proceeding underway that would culminate in a reviewable determination under 19 U.S.C. § 1516a. Accordingly, the cases relied upon by defendants and intervenor in support of their contention that the Court lacks jurisdiction in the instant case are distinguishable. Additionally, defendants' reliance upon *United States v. Uniroyal, Inc.,* 69 CCPA ——, 687 F.2d 467 (1982) is misplaced since that case did not involve the applicability of 28 U.S.C. § 1581(i) vis-à-vis 19 U.S.C. § 1516a.

In sum, the Court of International Trade has jurisdiction under section 1581(i) to determine whether ITA is authorized to adjust the countervailing duty deposit rate established by the final determination prior to an administrative review under section 1675. Plainly, that issue would be moot *after* the completion of a review under section 1675.

*Plaintiff's Claim Cannot Be Granted*

I.

We turn to the contention of defendants and intervenor that the complaint fails to state a claim upon which relief can be granted. As aptly observed by Chief Judge Re in *American Air Parcel Forwarding Co., Ltd. v. United States,* 1 CIT ——, Slip Op. 81–45, 515 F.Supp. 47 (1981), "[a]lthough the United States Court of International Trade may have subject matter jurisdiction, there remains the possibility that a particular complaint may not state a cause of action upon which relief may be granted."

To reiterate, plaintiff seeks an order mandating defendants to immediately reduce the estimated countervailing duty cash deposit rate established by the final order and determination of May 10, 1982. The nub of the issue is the authority of ITA under the Trade Agreements Act of 1979, P.L. 96–39, 93 Stat. 144 (July 26, 1979) to modify the estimated countervailing duty cash deposit rate outside the scope of the administrative review provisions in 19 U.S.C. § 1675. I have concluded that ITA lacks such authority. Hence, plaintiff's complaint fails to state a claim upon which relief can be granted and this action must be dismissed on that ground.

As a legal basis for its requested relief, plaintiff relies solely upon ITA's action and rationale in *Certain Iron Metal Castings from India,* 46 FR 38398, July 27, 1981 (the "*India*" case). Based upon the *India* case, plaintiff contends that ITA has an established practice or rule obligating ITA to make a pre-annual review adjustment of the countervailing duty deposit rate on Mexican ceramic tile as a result of the cessation of CEDI benefits. As previously noted, in the *India* case ITA reduced the countervailing duty deposit rate regarding an Indian subsidy program, notwithstanding that an administrative review under 19 U.S.C. § 1675 had not been completed.

ITA, in its letter of October 25, 1982 denying plaintiff's request for a pre-annual review countervailing duty deposit adjustment, distinguished the *India* case, and ITA also advised plaintiff that no further adjustments of countervailing duty deposits would be made outside the scope of its periodic review procedures, even in unusual circumstances. Thus, it appears that the *India* case is the *only instance* in which ITA has made an adjustment of the countervailing duty deposit rate prior to the completion of an annual review under section 1675(a).

In the Trade Agreements Act of 1979, Congress explicitly provided for the administrative review of outstanding countervailing duty orders in section 751 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675.

■ So far as pertinent to this matter, section 1675(a) requires the administering authority (ITA) to conduct a periodic review at least once during each twelve-month period beginning on the anniversary date of publication of a countervailing duty order. The purposes of this annual review are: to determine the net subsidy bestowed by the foreign government on the product subject to a countervailing duty order over the previous year, to ascertain the amount of duty to be assessed for importations which are currently under review, and to establish estimated cash deposit rates for entries of merchandise in the ensuing year. If in accordance with ITA's final results of

administrative review under section 1675 it develops that the estimated duties deposited exceed the actual countervailing duties ultimately determined to be due, defendants concede that the difference must be refunded to the importer with interest under 19 U.S.C. § 1671f and 1677g.

Importantly, section 1675(d) provides for the ITA, during its periodic review proceeding, to hold a hearing upon the request of any interested party, in accordance with 19 U.S.C. § 1677c(b). This latter section requires that notice of such a hearing must be published in the Federal Register prior to the hearing date, and 19 U.S.C. 1675(a)(1) requires that the results of the annual review determination likewise be published in the Federal Register.

Section 1675(b) provides for an administrative review of a countervailing duty order, after publication of a Federal Register notice, based upon a request concerning "changed circumstances". A section 1675(b) review includes, *inter alia,* the opportunity for the submission of written comments and a hearing, and such review can be conducted only if there are "changed circumstances" determined to be "sufficient to warrant review". More, a section 1675(b) review may not be instituted less than twenty-four months after the issuance of a final determination "in the absence of good cause shown". 19 U.S.C. § 1675(b)(2); 19 CFR § 355.41(b)(2).

■ Thus, prior to the annual review conducted under section 1675(a), Congress provided only one vehicle for modifying a final countervailing duty order: a section 1675(b) "changed circumstances" review, which provides an opportunity for participation by all interested parties. Based upon a request for review showing changed circumstances (i.e., termination or modification of a subsidy program), ITA has no authority to adjust the countervailing duty deposit rate, except within the framework of section 1675(b). Patently, then, there is no authority in the statute for ITA to grant the immediate adjustment sought by this plaintiff, which adjustment would be completely outside the framework of section

1675 and the procedural safeguards envisaged by the provisions of that section.

Section 1675(b), with its procedural safeguards for making changed circumstances adjustments, is indicative of Congressional intent that the informal and immediate relief sought by plaintiff is not permissible. Moreover, section 1675(b) refutes plaintiff's repeated assertions that the statutory scheme is "silent" respecting interim adjustments for substantial reductions in countervailable subsidies. Plaintiff's interpretation of the statute would eliminate the procedural safeguards in section 1675 and the role of domestic interested parties, which role and safeguards were of vital concern to Congress in the Trade Agreements Act of 1979. See S.Rep. No. 96–249, 96th Cong., 1st Sess. (July 17, 1979), U.S. Code Cong. & Admin.News 1979, p. 381, at pages 80–81.

■ From the foregoing analysis, I conclude that the pre-annual review adjustment made by ITA in the *India* case was *ultra vires,* and ITA's conclusion in its letter to plaintiff of October 25, 1982 that it should not make such interim adjustments in the future was correct. Since the *India* case represents merely an isolated instance of an interim adjustment outside the scope of a section 1675 review, I find no established practice or rule that is obligatory on ITA in future cases. Nor does the *India* case—never followed in another case—constitute an established practice or administrative interpretation by ITA which would warrant judicial deference in the construction of the law.[4]

In point of fact, ITA's decision in the *India* case shows that ITA's administrative

practice respecting adjustment of countervailing duty deposits was: "It is the policy of the Department not to adjust estimated duty deposit rates prior to the completion of annual reviews mandated under Section 751 of the Tariff Act [19 U.S.C. § 1675]. The suspension of liquidation and yearly review procedures established under that section ensure that the countervailing duties are ultimately assessed in an amount corresponding to the actual subsidy level." 46 FR 38399. Consequently, it is clear that ITA's adjustment in the *India* case represented a *deviation* from the Department's administrative practice.

Significantly too, in connection with the administrative practice and policy of ITA in making adjustments of countervailing duty deposit rates, the recent Notice of Preliminary Results of Administrative Review of Countervailing Duty Order covering ceramic tile from Mexico[5] is illuminating. There, ITA explained (47 FR 53087 at 53088, November 24, 1982):

(2) *Comment:* One Mexican ceramic tile firm contends that the Department should immediately lower the estimated duty deposit rate from 15.84 percent to 5.84 percent for all exports of this merchandise to the United States, based on the Mexican government's suspension of CEDI benefits for all exports on or after August 26, 1982. The firm cites as a precedent the action taken by the Department on July 27, 1981 [46 FR 38398] to lower the duty deposit rate on iron metal castings from India without going through an administrative review under section 751.

4. Fundamentally, of course, "a court may accord great weight to the long-standing interpretation placed on a statute by an agency charged with its administration". *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 274–75, 94 S.Ct. 1757, 1761–1762, 40 L.Ed.2d 134 (1975). Additionally, judicial deference to long-standing administrative interpretation and practice respecting the countervailing duty law is well established. *Zenith v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1970). ITA's "one shot" action in the *India* case can hardly be regarded as long-standing practice or admin-

istrative interpretation. See also *Asahi Chemical Industry Company, Ltd. v. United States,* 4 CIT ——, Slip Op. 82–75, 548 F.Supp. 1261 (1982).

5. As stated in its notice of November 24, 1982, the ITA has conducted an administrative review of the countervailing duty order on ceramic tile from Mexico published on May 10, 1982 (47 FR 20013) covering twelve of the exporters of this merchandise to the United States and the period February 23, 1982 through March 31, 1982.

*Department's Position:* Following the adjustment in duty deposit rates made for the Indian castings case, the Department reviewed its action and reconsidered the policy and administrative impact. We concluded that we would not, even in unusual circumstances, continue the practice. The logical extension of such a policy was that the Department would have to raise the duty deposit rate in situations where the subsidy rate had been increased.

The Department did not do this, even in the case of leather wearing apparel from Mexico where we had evidence that the CEDI rate had doubled. The obvious problem is that such a policy is inherently biased toward decreases which governments will expeditiously report.

Continuing, ITA definitively stated in its Notice of Preliminary Results of Administrative Review (47 FR at 53088):

A policy which allows for the immediate adjustment of the rate precludes the participation of other interested parties, clearly contrary to congressional intent. The provisions for review and comment permit full consideration of the facts. The petitioner may wish to dispute the facts or allege additional subsidies which have not yet been investigated.

For these reasons, the Department intends to make future changes in duty deposit rates in the context of the section 751 review process.

Notably, ITA's position, as set forth above, was previously included in the Department's letter to plaintiff dated October 25, 1982.

## II.

Plaintiff stresses the unfairness and inequity of ITA's present policy of requiring the deposit of estimated duties to cover a subsidy program that has been discontinued by the foreign government until the completion of an administrative review under section 1675(a). However, defendants concede that excessive estimated duty deposits must, upon liquidation of entries, be refunded with interest. More, if ITA were held to be authorized to make interim *downward* adjustments outside the scope of the section 1675 procedures, ITA, as it pointed out in its November 24, 1982 ruling, *supra,* would be authorized, indeed obligated, to make *upward* adjustments in deposit rates (without participation of affected parties) where it finds that the subsidies have been increased. Were such a policy followed in the case of an interest rate subsidy for example, which could fluctuate daily depending upon interest rate levels, ITA could be obligated to make daily adjustments in estimated duty deposit rates. I am certain that such a scenario of frequent, abrupt, and possibly chaotic adjustments to countervailing duty deposit rates was never envisaged by Congress, and would most certainly frustrate Congressional intent relative to section 1675.

It is true, as emphasized by plaintiff, that the ITA itself in the *India* case reasoned that, under the circumstances presented, failure to provide an interim adjustment in the countervailing duty deposit rate would result in unfair treatment of importers. But the short answer to plaintiff's argument is that while Congress could have authorized the administering authority to make interim adjustments in immediate response to changes in subsidies, Congress did not do so. Indeed, if there is any unfairness arising out of the present statutory scheme for adjusting countervailing duty deposit rates under section 1675, or if as a policy matter section 1675 procedures should be obviated or dispensed with in special circumstances (i.e., where the subsidies have changed substantially), any exceptions to or amelioration of the statutory requirements should be prescribed by Congress, and not created by judicial fiat.

In essence, Congress has manifested its intent that estimated countervailing duty deposit rates established by a countervailing duty order should be subject to modification solely under section 1675. Intervenor and defendants have called to the

Court's attention that plaintiff is, in fact, presently seeking a reduction of the countervailing duty deposit rate on ceramic tile from Mexico in pending administrative proceedings before ITA under sections 1675(a) and (b). As noted *supra,* on November 24, 1982 ITA in an administrative review under section 1675(a) preliminarily rejected a request that there should be an immediate reduction in the deposit rate to reflect the cessation of CEDI benefits. 47 FR 53088.

Of course, I express no opinion at this time as to whether plaintiff's request for a section 1675(b) "changed circumstances" review should be granted or denied by ITA, inasmuch as that proceeding is still pending, and plaintiff has not exhausted its administrative remedies. As a matter of well-settled principles of administrative law and by statute, plaintiff must exhaust its administrative remedies before seeking judicial review. See 28 U.S.C. § 2637(d); *Krupp Stahl AG v. United States, supra.*

■ For the foregoing reasons, I find that plaintiff's complaint fails to state a claim upon which relief can be granted.

In light of the conclusions reached, the Court need not consider the contentions of defendants that the relief sought by plaintiff is barred by the Anti-Injunction statute, 26 U.S.C. § 7421(a); that there are limitations on the Court's injunctive powers which preclude the relief sought; and that the remedy of mandamus is inappropriate under the circumstances of this case.

Accordingly, this action is dismissed.