**HIDE–AWAY CREATIONS, LTD., Plaintiff,**

v.

**The UNITED STATES, et al., Defendants.**

**CONFECCIONES GENERALES, S.A., Plaintiff,**

v.

**The UNITED STATES, et al., Defendants.**

**Court Nos. 83-5-00644, 83-5-00645.**

United States Court of International Trade.

Dec. 21, 1983.

Kemp, Smith, Duncan & Hammond, Esqs., El Paso, Tex. (Luis Chavez and John J. Scanlon, Jr., El Paso, Tex., of counsel), for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Lit. Branch, Washington, D.C., and Sheila N. Ziff, New York City, for defendants.

BERNARD NEWMAN, Judge:

## Introduction

These companion actions raise yet another question of first impression relating to the administration of this nation's countervailing duty law, a vital aspect of our international trade policy. Inasmuch as these two actions involve identical facts and legal issues, practicality dictates the writing of a consolidated opinion.

Confecciones Generales, S.A. (Confecciones) is the exporter of merchandise covered by a countervailing duty determination and order; Hide-Away Creations, Ltd. (Hide-Away) is the importer. Plaintiffs instituted these actions on April 28, 1983 contesting the final results of an administrative review of a countervailing duty determination and order of the United States Department of Commerce, International Trade Administration (ITA) conducted pursuant to Section 751 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675 (Section 751) covering imports of leather wearing apparel from Mexico (48 Fed.Reg. 13474 (March 31, 1983)).

Plaintiffs seek to enjoin the assessment of countervailing duties and the collection of a cash deposit of estimated countervailing duties of $169,216.18 on the imported merchandise predicated on the ground that the administrative record establishes that the exporter, Confecciones, received no bounty or grant from the Mexican Government within the meaning of section 303 of the Tariff Act of 1930, 19 U.S.C. § 1303. In response to the complaints, defendants have moved to dismiss, contending that the Court lacks subject matter jurisdiction, and that plaintiffs have failed to state a claim upon which relief can be granted.

On June 10, 1983 this Court granted plaintiffs' applications for temporary restraining orders enjoining defendants from liquidating any of the entries covered by the final results, *supra*, and from enforcing or implementing the final results. By stipulations dated June 29, 1983, the temporary restraining orders were extended to and including ten days after entry of the Court's ruling on defendants' motions to dismiss. Subsequently and by consent on August 29, 1983, this Court extended the temporary restraining orders to and including 20 days after entry of the Court's ruling on defendants' motions to dismiss.

Oral argument was heard on November 22, 1983.

For the reasons below, I conclude that the Court has subject matter jurisdiction and that plaintiffs have stated a claim upon which relief can be granted. I further find that these matters must be remanded to ITA for further proceedings consistent with the conclusions herein.

## Background

On April 10, 1981, ITA published notice of its final affirmative countervailing duty determination and order covering imports of leather wearing apparel from Mexico (46 Fed.Reg. 21357). According to the notice, ITA found that the Government of Mexico's tax rebate certificate program ("CEDI") constituted a bounty or grant (subsidy) within the meaning of section 303 of the Tariff Act of 1930. The United States Customs Service (Customs) was directed to continue the suspension of liquidation previously ordered in the preliminary affirmative determination published on January 14, 1981 (46 Fed.Reg. 3256); and effective April 10, 1981 a cash deposit

of 5 percent *ad valorem* was required on leather wearing apparel from Mexico entering the United States, or being withdrawn from warehouse for consumption. In its final determination and order, ITA also announced that "[i]n accordance with section 751 of the Act [19 U.S.C. § 1675], the Department *intends to conduct an administrative review within twelve months of the publication of the countervailing duty order*" (emphasis added).

However, without publication of any further prior notice, on April 19, 1982—twelve months and ten days after the publication of the final determination and order—ITA commenced the first administrative review of the countervailing duty order on leather wearing apparel from Mexico by sending a questionnaire to the Mexican Embassy in Washington, D.C. which was to forward copies to all concerned manufacturers in Mexico.

On January 21, 1983, ITA published notice of the preliminary results of its first administrative review of the countervailing duty order on leather wearing apparel from Mexico (48 Fed.Reg. 2810) covering the period of January 14, 1981 (the date liquidation was suspended in the preliminary affirmative determination (46 Fed.Reg. 21357)) through December 31, 1981. In addition to the CEDI program, which was found to be countervailable in the final affirmative countervailing duty determination, the review investigated the Fund for the Promotion of Exports of Mexican Manufactured Products ("FOMEX") and the Certificates of Fiscal Promotion ("CEPROFI") programs of the Mexican Government, the latter two programs having been found countervailable in ITA's final affirmative countervailing duty determination and order covering *ceramic tile* from Mexico published on May 10, 1982 (47 Fed.Reg. 20012).

The notice explained that ITA preliminarily determined the amount of net bounty or grant bestowed by the Government of Mexico for exports of leather wearing apparel by firms other than three "certified" firms, for the period under review, to be: 10 percent of the f.o.b. invoice price under CEDI, 3.35 percent under FOMEX, and zero percent under CEPROFI, for a total of 13.35 percent of the f.o.b. invoice price.

According to the notice, ITA had set forth a certification process in the final affirmative countervailing duty order on *ceramic tile* from Mexico (which process was utilized by ITA in the instant review, as well) that would allow an adjustment of the rate of cash deposit for estimated countervailing duties to zero for firms certified and verified as having neither applied for nor received countervailable benefits. On July 2, 1982, ITA received the required certificates from these three "certified" firms as well as the corresponding verification certificates from the Mexican Government. Accordingly, it was preliminarily determined that the aggregate net bounty or grant conferred by the three programs during the period under review was zero percent for the three "certified" firms but was 13.35 percent *ad valorem* for all other firms.

ITA completed its administrative review and issued its final results (identical to the preliminary results), which were published in the Federal Register on March 31, 1983 (48 Fed.Reg. 13474).

Confecciones is a Mexican producer of leather wearing apparel which is the subject of the involved countervailing duty order and section 751 administrative review. Hide-Away purchased and imported the leather wearing apparel from Confecciones during the period of January 14 through December 31, 1981, and has continued to import such merchandise to the present.

On about January 29, 1983 plaintiffs first learned of the preliminary results in the first administrative review (published on January 21, 1983) and immediately proceeded to comply with ITA's certification procedures. Thus, on February 7, 1983—some six weeks before the publication of the final results of the first administrative review—Hide-Away wrote to the Mexican Embassy in Washington forwarding certification forms dated February 4, 1983, signed by Confecciones, stating that the latter company did not receive and will not

apply for benefits under the CEDI, FO-MEX and CEPROFI programs. Hide-Away's letter requested the Embassy to obtain a certificate from the Mexican Government which would establish a zero deposit duty rate for Confecciones. Thereafter, by letter dated April 20, 1983 the Mexican Embassy forwarded to ITA certifications prepared by the Government of Mexico stating that Confecciones neither received nor applied for any benefits from the three programs. The Embassy sent another letter, also dated April 20, 1983, enclosing certificates from five Mexican leather wearing apparel manufacturers, including Confecciones, and requested the zero deposit rate. Those letters were received by ITA on April 21, 1983, three weeks after publication of the final results of the administrative review.

On May 10, 1983, ITA received a letter from counsel for plaintiffs confirming: (1) that, as far back as February 7, 1983, Confecciones had submitted the required certificates to the Government of Mexico requesting verification that Confecciones had neither applied for nor received benefits under the programs; and (2) that counsel had been informed by ITA that it had received the verifications and certificates on April 21, 1983. The letter requested ITA to include Confecciones among the firms determined to have received a total bounty or grant of zero for the period of January 14, 1981 through December 31, 1981 and any period subsequent thereto. Plaintiffs' counsel was advised by ITA that the certificates were filed too late for consideration in the first annual review, and ITA refused to grant Confecciones' claim to a zero deposit rate.[1]

### Jurisdiction

■ We first address defendants' motions to dismiss for lack of subject matter jurisdiction.

In substance, defendants' position is that Confecciones' certificates were received by ITA too late for consideration of Confec-

ciones' claimed zero benefit; and that the gravamen of plaintiffs' complaints is ITA's refusal to reopen the matter and to conduct a post-annual review adjustment affecting the entries covered by the completed first annual review. Based upon the rationale of this Court's decision in *Ceramica Regiomontana, S.A. v. United States*, 5 CIT —, 557 F.Supp. 596 (1983), defendants contend that there is no authority for ITA to make a post-annual review adjustment and this Court lacks jurisdiction under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c) to entertain an action contesting ITA's refusal to grant plaintiffs a post-annual review adjustment.

Plaintiffs insist that, by the plain language of paragraphs seven through fourteen of their complaints, they are contesting the final results of the first administrative review under section 751 published in the Federal Register on March 31, 1983 in that such results failed to include Confecciones as a "zero duty deposit rate" company (plaintiffs' memoranda, at 12). Accordingly, argue plaintiffs, the Court has subject matter jurisdiction under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c).

I agree with plaintiffs' argument, and find that defendants' reliance upon *Ceramica* is misplaced.

In *Ceramica*, the plaintiff had applied to ITA for an interim reduction of the estimated countervailing duty cash deposit rate on imports of ceramic tile from Mexico. Plaintiff's application for an interim adjustment was made after the final countervailing duty order and prior to the review under section 751. After ITA's refusal to grant plaintiff an interim adjustment, plaintiff sought an order of mandamus from this Court to compel ITA to make an immediate adjustment and predicated the Court's jurisdiction upon 28 U.S.C. § 1581(i). Defendants and the intervenor cross-moved for dismissal of the action on the grounds that the Court of International Trade lacked subject matter jurisdiction

---

**1.** Plaintiffs' counsel has been advised by ITA that Confecciones' certificates have been included in the current second administrative review under section 751.

and that plaintiff had failed to state a claim upon which relief can be granted.

The cross-motion to dismiss for lack of jurisdiction was denied. While it was undisputed that the Court lacked subject matter jurisdiction under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c), section 1581(i) was held to be an appropriate basis for jurisdiction: "Since the contested ITA decision was made outside the scope of any administrative proceeding which ultimately would result in a determination reviewable under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c), obviously this is the circumstance in which Congress intended that the Court's residual jurisdiction could be invoked". 557 F.Supp. at 600.

Accordingly, in *Ceramica* this Court found that it had subject matter jurisdiction under section 1581(i) to determine whether ITA was authorized to adjust the countervailing duty deposit rate established by the final order prior to an administrative review under section 751. However, this Court went on to find that ITA lacks authority to modify the estimated countervailing duty cash deposit rate prior to and outside the scope of the administrative review provisions in section 751, and that consequently, the complaint failed to state a claim upon which relief could be granted.

Unlike the circumstances in *Ceramica* where, as noted above, plaintiff there sought an order compelling ITA to make an interim adjustment of a duty deposit rate prior to and outside the scope of the proceedings prescribed by section 751, here plaintiffs seek review of the final results of the first administrative review under section 751. I therefore conclude that plaintiffs' alleged aggrievance by the final results of the section 751 review falls within this Court's jurisdiction under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c).

Since plaintiffs' complaints state sufficient facts giving the Court jurisdiction under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c), the complaints are not "technically defective" under Rule 8(a) of the Rules of this Court, as claimed by defendants, for failure to specifically plead section 1581(c). *See City Federal Savings and Loan Association v. Crowley*, 393 F.Supp. 644, 650 (E.D.Wis.1975); *James v. Ambrose*, 367 F.Supp. 1321, 1324 (D.St.Croix, V.I., 1973).

### Failure to State a Claim

■ Turning to the other branch of defendants' motions to dismiss—failure to state a claim upon which relief can be granted—we must observe the fundamental rule that for purposes of such motion, all relevant and material facts well pleaded in the complaint must be taken as true or admitted. 2A Moore's Federal Practice ¶ 12.08, at 2266, 2267 (2d ed. 1982); 35B C.J.S. *Fed. Civ.Proc.* § 854 (1960).

■ The complaints in the instant cases, contesting the final results of the first administrative review, allege *inter alia,* that during the period covered by the review Confecciones neither applied for nor received benefits under any of the Mexican Government's subsidy programs, and hence Confecciones should have been included among the firms determined by ITA to have received a total bounty or grant of zero for the period in question. Continuing, the complaints allege that in accordance with the certification process, ITA received certificates pertaining to Confecciones from the Government of Mexico verifying that Confecciones neither applied for nor received benefits under any of the programs. Deeming the factual allegations of the respective complaints as admitted by defendants, I find that the complaints state a claim upon which relief can be granted. Since so far as the complaints are concerned, plaintiffs seek no relief outside the scope of the section 751 review, the present cases are plainly distinguishable from *Ceramica.*

For the reasons stated above, defendants' motions to dismiss are denied.

### Notice

■ Defendants have not yet filed their answers to the complaints, and hence the cases are not at issue on the merits. Nev-

ertheless, in the interest of completing the record and hopefully expediting the disposition of these cases for the sake of judicial economy, the Court has considered and will rule on the question of notice under section 751, well-briefed and skillfully argued by the parties.[2] On this aspect of the cases, plaintiffs contend that ITA failed to publish in the Federal Register notice of the initiation of the first section 751 review of the countervailing duty order on leather wearing apparel from Mexico, as required by the statute. Such procedural irregularity, plaintiffs insist, was substantial and prejudicial, with the result that the first administrative review is null and void with respect to plaintiffs.

Defendants do not dispute the statutory requirement for publication of notice in the Federal Register announcing the initiation of the first administrative review which commenced on April 19, 1982. However, defendants posit that such notice requirement was satisfied by ITA's statement of intent to conduct a review within 12 months of the order, which statement was included in the notice of the final affirmative countervailing duty determination and order published on April 10, 1981 (46 Fed. Reg. 21357).

I am unable to agree with defendants' contention. Not only is it inexplicable why a notice allegedly published in accordance with section 751 would be published one year and ten days in advance of the actual date of initiation of the review, a specific date of initiation was never noticed by the ITA. Obviously, a notice of intent to conduct an administrative review without indication of a specific date for initiation makes a mockery of the notice requirement of section 751. Moreover, it is not logical for interested parties to assume that a mere statement of intent to conduct a review at some unspecified time within twelve months constitutes the notice required by section 751.

The short of the matter is that defendants' construction of the statute, as requir-

ing nothing more than notice of intent to conduct a section 751 review within twelve months, is palpably unreasonable and must be rejected.

Plaintiffs, who (according to an affidavit submitted to the Court) initially became aware of the first administrative review and ITA's certification methodology for a zero deposit rate shortly after publication on January 21, 1983 of the preliminary results (48 Fed.Reg. 2810), maintain that ITA's failure to publish notice of the initiation of the first administrative review is a substantial procedural irregularity and entirely prejudicial. Thus, argue plaintiffs, the results of the first administrative review are null and void respecting plaintiffs.

In *Woodrum v. Donovan*, 4 CIT ——, 544 F.Supp. 202 (1982), *rehearing denied*, 4 CIT ——, Slip Op. 82–78 (1982), *decision on remand*, 5 CIT ——, 564 F.Supp. 826 (1983), *appeal pending*, relied upon by plaintiffs, Chief Judge Re held that the Secretary of Labor, in determining that plaintiffs were not eligible for trade adjustment assistance benefits under the Trade Act of 1974, failed to comply with the mandatory procedural requirements of the statute, including *inter alia*, publication of notice relative to receipt of a petition and initiation of an investigation. Chief Judge Re found that these procedural irregularities prejudiced the rights of the plaintiffs, and so far as pertinent to the present case, aptly stated (544 F.Supp. at 207):

> The facts of the present case indicate that the Secretary's failure to conduct an investigation or publish the required notices *did not serve the ends of justice, but only the administrative convenience of the agency.*
>
> When, as in the present case, agency action is taken without observance of procedure required by law, courts are empowered to set aside that action. Administrative Procedure Act § 706(2)(D), 5 U.S.C. § 706(2)(D) (1976). Nevertheless, as defendant correctly points out, courts will not set aside agency action unless

---

**2.** The Court wishes to express its appreciation to counsel for their cooperation and conducting

these cases in the best traditions of our profession.

the procedural errors complained of were prejudicial to the party seeking to have the action declared invalid. *John v. Carr & Son, Inc. v. United States*, 69 Cust.Ct. 78, 87, C.D. 4377, 347 F.Supp. 1390 (1972), *aff'd* 61 C.C.P.A. 52, C.A.D. 1118, 496 F.2d 1225 (1974).

The Secretary of Labor's failure to publish a notice and summary of his final determination in the Federal Register did not prejudice the rights of the plaintiffs in this action. Therefore, that error would not, by itself, compel the court to set aside the Secretary's determination. This cannot be said of the Secretary's failure to conduct an investigation, *and his failure to publish notice of the receipt of a petition. These procedural errors had the effect of excluding from the administrative record facts which are directly relevant to the Secretary's determination* that plaintiffs are not eligible for trade adjustment benefits. [Emphasis added.]

Analogous to the situation in *Woodrum*, the procedural error here by ITA in failing to publish a proper notice in the Federal Register prior to the initiation of the first administrative review resulted in substantial prejudice to plaintiffs, *i.e.*, the late filing and exclusion from administrative review of evidence directly relevant to Confecciones' zero benefit status. Absent publication in the Federal Register of the date that the first administrative review would be initiated, there were no other means prescribed by the statute for plaintiffs to have ascertained the actual date of the commencement of the first section 751 review. The statute places an explicit obligation on ITA to publish a notice in the Federal Register prior to initiation of an administrative review, but not an obligation on parties to make periodic inquiries of ITA as to whether an administrative review has commenced.

I find, that under the circumstances, plaintiffs exercised good faith in their efforts to comply with the certification procedures specified by ITA to obtain a zero duty deposit rate; and more, that plaintiffs were prejudiced by ITA's failure to publish a timely and proper notice of the initiation of the first administrative review. Despite plaintiffs' best efforts to comply with the certification process established by ITA, Confecciones' certificates failed to reach ITA via the Mexican Embassy in time for the first administrative review.[3]

Although section 751 itself dictates the general time-frame for conduct of the administrative review (*viz.*, at least once during each 12-month period beginning on the anniversary of the date of publication of a countervailing duty order), nevertheless, interested parties are not apprised by the statute itself as to a specific date for the initiation of a particular review. This circumstance was recognized by Congress in providing that an administrative review would be conducted *"after* publication of notice of such review in the Federal Register" (emphasis added). Therefore, published notice of the *specific date* for a commencement of an administrative review is vital to afford an opportunity for participation by all interested parties, and hence such published notice is mandated by the statute prior to the agency's initiation of the review proceedings.

As noted above, ITA failed to publish notice in the Federal Register regarding the specific date for commencement of the first administrative review, and as a consequence plaintiffs were prejudiced by lack of proper notice. In *Woodrum*, wherein the failure of the Secretary of Labor to

---

**3.** Defendants acknowledge that Confecciones' certificates submitted to ITA for the first administrative review were accepted by ITA for the second administrative review. Based on these same certificates, Confecciones has now been accorded "zero deposit rate status" in the second section 751 review as evidenced by the Notice of Preliminary Results (48 Fed.Reg. 43707 (1983)).

An undisputed affidavit by a certified public accountant, submitted by plaintiffs, indicates that if Confecciones' certificates are not considered by ITA in the *first* administrative review, the importer faces assessment of $169,-216.18 in countervailing duties *notwithstanding* that the certificates indicate that Confecciones neither received nor applied for benefits under the Mexican subsidy programs.

publish notice of receipt of a petition and the initiation of an investigation resulted in prejudice to plaintiffs, the matter was remanded to the Secretary for further proceedings. Here, Confecciones' certificates were received by ITA after publication of the final results of the section 751 review, and therefore the certificates are not technically part of the administrative record notwithstanding that they were transmitted by ITA to the Court as such. Defendants' observation that *de novo* review of countervailing duty proceedings is precluded under the Trade Agreements Act of 1979 is accurate. 19 U.S.C. § 1516a(b)(2).

In all candor, while the Court appreciates defendants' position to be that under section 751, ITA had no authority to consider Confecciones' certificates subsequent to publication of ITA's final results of the first administrative review, under all the facts and circumstances, the significant factor of lack of proper notice by ITA warrants remand at this juncture for ITA's consideration of Confecciones' certificates.

### Conclusion

In summary, the Court of International Trade has subject matter jurisdiction under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c), and the complaints herein state a claim upon which relief can be granted. Further, ITA failed to publish prior notice of the specific date of the initiation of its first administrative review pursuant to section 751 of the subject countervailing duty order; and plaintiffs were prejudiced thereby, *i.e.*, exclusion of Confecciones' certificates from the final results of the administrative review published on March 31, 1983. Under the facts and circumstances herein,

these matters will be remanded to ITA for its consideration of Confecciones' certificates, and for reconsideration of the final results of its administrative review under section 751.

Accordingly, it is hereby ORDERED:

1. That defendants' motions to dismiss are denied;

2. That these matters are remanded to ITA for further proceedings in connection with its administrative review of the countervailing duty determination and order conducted pursuant to section 751 covering imports of leather wearing apparel from Mexico (48 Fed.Reg. 13474 (March 31, 1983));

3. That within 30 days of the service of this order: ITA shall review as part of the administrative record in these matters the zero deposit rate certifications pertaining to Confecciones received by ITA on April 21, 1983 and any matters pertinent thereto; and ITA shall publish in the Federal Register supplemental final results of its administrative review published on March 31, 1983 (48 Fed.Reg. 13474). Certified copies of said supplemental final results shall be transmitted to the Clerk of the United States Court of International Trade and also shall be served upon plaintiffs.

4. That the temporary injunctions are extended to 20 days after final disposition by the Court following remand.