**Julian R. WOODRUM, Dennis Dorsey and Sherman Johnson, Plaintiffs,**

v.

**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Defendant.**

**Court No. 80–12–00105.**

United States Court of International Trade.

July 26, 1982.

Robert S. Baker, Appalachian Research and Defense Funds, Inc., Beckley, W. Va., for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D. C., Sheila N. Ziff, New York City, for defendant.

RE, Chief Judge:

In this action, plaintiffs, on behalf of the former employees of a new car dealership, seek review of a final determination by the Secretary of Labor that they are not eligible for trade adjustment assistance benefits under Subchapter II, Part 2 of the Trade Act of 1974, 19 U.S.C. §§ 2271–2322 (1976). The court, after reviewing the administrative record and the arguments of the parties, has concluded that the Secretary of Labor failed to comply with the procedural requirements of the statute and that these procedural irregularities prejudiced the rights of plaintiffs. Accordingly, the court remands the matter to the Secretary for further administrative proceedings which are to be conducted in conformity with statutory requirements.

The Trade Act of 1974 was intended to strengthen economic relations between the United States and foreign countries through open and nondiscriminatory world trade. Trade Act of 1974 § 2(1), 19 U.S.C. § 2102(1) (1976). In enacting this legislation, Congress was fully aware that increased imports could result in the economic dislocation of portions of the American labor force. Consequently, the Act also provides "procedures to safeguard American industry and labor against unfair or injurious import competition, and to assist . . . workers . . . to adjust to changes in international trade flows." *Id.*, at § 2(4), 19 U.S.C. § 2102(4).

The safeguards for workers took the form of a trade adjustment assistance program which provides dislocated workers with a variety of benefits including unemployment compensation, job placement and retraining services, and job search and relocation allowances. *Id.*, at §§ 232–33, 235–38, 19 U.S.C. §§ 2292–93, 2295–98. Before any workers may enjoy these benefits, however, a group of workers, or their union or authorized representative, must file with the Secretary of Labor a petition requesting certification of eligibility for benefits. The statute directs that, upon receipt of a petition, the Secretary shall publish in the Federal Register notice that he has received a petition and initiated an investigation. *Id.*, at § 221(a), 19 U.S.C. § 2271(a). Interested persons may, within ten days of the publication of this notice, request a public hearing on the petition. *Id.*, at § 221(b), 19 U.S.C. § 2271(b).

The Secretary is required to certify petitioning workers as eligible for assistance if, in accordance with section 222 of the Trade Act, 19 U.S.C. § 2272, it is determined:

    (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

    (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

    (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

*     *     *     *     *     *

Failure to satisfy any one of these criteria will result in a denial of certification by the Secretary of Labor.

When the Secretary makes a final determination either granting or denying certification, notice of that decision, together with a summary of its underlying rationale is to be published in the Federal Register. *Id.*, at § 223(c), 19 U.S.C. § 2273(c). This final determination is reviewable in the Court of International Trade. *Id.*, at § 284, 19 U.S.C. § 2395 (Supp IV 1980).

On August 22, 1980, the plaintiffs in this action filed with the Labor Department's Office of Trade Adjustment Assistance (OTAA) a petition for certification of eligibility for trade adjustment assistance benefits on behalf of the former employees of Capital Chrysler Plymouth of Montgomery, Inc. of Montgomery, West Virginia. The petition consisted of a single page form, supplied by the Department of Labor, on which the plaintiffs stated their names, addresses, former place of employment, the name and address of an official of the de-

funct auto dealership, the dates on which their employment terminated, and an allegation that the loss of their jobs was due to an increase in the number of imported cars sold in the United States.

Without publishing notice of the receipt of the petition, and without conducting an investigation, OTAA returned plaintiffs' petition, advising plaintiffs by letter that they were service workers employed by a firm that did not produce an article within the purview of section 222 of the Trade Act. OTAA concluded, therefore, that plaintiffs were not eligible for trade adjustment assistance benefits.

By letter dated September 26, 1980, plaintiffs requested administrative reconsideration of the Secretary's negative determination. Plaintiffs asserted that their employer was involved in the production of automobiles, the import-impacted article, and that they were entitled to receive the same benefits as other auto production workers.

After reexamining plaintiffs' petition, OTAA affirmed its original negative determination. OTAA explained that its determination was based on a finding that Capital Chrysler Plymouth of Montgomery was an independently owned automobile dealership, operating under a franchise agreement. OTAA also advised plaintiffs that this decision constituted the Secretary of Labor's final determination. Notice of this final determination was not published in the Federal Register.

On November 3, 1980, plaintiffs commenced this action seeking judicial review of the Secretary's final determination.[1] They ask the court to set aside the Secretary's determination for three reasons. First, they contend that the Secretary of Labor misconstrued section 222(3) of the Trade Act by narrowly interpreting the word "produced". Second, plaintiffs submit that the Secretary's interpretation of section 222(3), as a practical matter, has result-

---

1. Plaintiffs filed their petition for review in the United States Court of Appeals for the Fourth Circuit. However, as of November 1, 1980, jurisdiction over these actions was transferred to the United States Court of International Trade. In accordance with law, the Fourth Circuit Court of Appeals transferred the action to this court. *See* Customs Courts Act of 1980, Pub.L. No. 96–417, 94 Stat. 1727.

ed in the dissimilar treatment of similarly situated workers. Finally, plaintiffs allege that the Secretary failed to follow the procedural dictates of the Act. Because the court has concluded that procedural irregularities at the administrative level have prejudiced the rights of plaintiffs in this action, it will not, at this time, consider plaintiffs' first two claims.

The procedural errors which plaintiffs allege have infringed their rights are: the Secretary of Labor's failure to investigate their petition; the Secretary's failure to publish in the Federal Register notice that he had received plaintiffs' petition and initiated an investigation; and the Secretary's failure to publish in the Federal Register a notice and summary of his final determination concerning plaintiffs' eligibility for benefits.

Defendant admits that no investigation was conducted and that no notices were published in the Federal Register but nevertheless urges the court to affirm the Secretary's final determination. It submits that the determination should be upheld because, either, it was within the discretion of the Secretary to modify the procedural directives of the statute in this case, or, even if it was error to take certain "procedural shortcuts", these lapses constituted harmless error.

Central to defendant's argument is its contention that the Secretary was able to determine from the contents of plaintiffs' petition that they were ineligible for benefits. Hence, defendant argues, an investigation or hearing would have been a futile exercise because neither would have altered the Secretary's ultimate decision. Plaintiffs, on the other hand, contend that because the Secretary did not conduct an investigation or permit them to give testimony or submit evidence there was insufficient information upon which to base a reasonable conclusion.

Defendant's assertion that it is within discretion of the Secretary to modify the procedural directives of the statute on a case by case basis presents two questions. The first is whether the Trade Act of 1974

implicitly requires the Secretary of Labor to conduct an investigation whenever a petition for certification of eligibility for trade adjustment assistance benefits is properly filed. The second is whether the provisions of the Act which explicitly direct the Secretary to publish notice of the receipt of a petition and notice of a final determination of eligibility are mandatory or permissive.

■ The 1974 Trade Act's only reference to the Secretary of Labor's duty to investigate petitions is contained in section 221 which states that upon receiving a petition the Secretary "shall promptly publish notice ... that he has received the petition and initiated an investigation." Despite the paucity of statutory language on this point, it is evident in reading the Act and its legislative history that the Secretary of Labor was intended to assume the responsibilities which, under the Trade Expansion Act of 1962, had reposed in the United States International Trade Commission. See S.Rep.No.93–1298, 93d Cong., 2d Sess. 132–33 (1974), U.S.Code Cong. & Admin.News 1974, p. 7186; H.R.Rep.No.93–571, 93d Cong., 1st Sess. 53–54 (1973). Those responsibilities included the duty to investigate each petition filed by a group of workers. Trade Expansion Act of 1962 § 301(c)(2), Pub.L. No. 87–794, 76 Stat. 872 (repealed 1975). Nothing in the legislative history of the Trade Act of 1974 indicates that Congress intended to curtail the government's duty to investigate petitions for certification of eligibility for trade adjustment assistance benefits.

Accordingly, the court has concluded that the Secretary of Labor must conduct an investigation into each properly filed petition. The nature and extent of the investigation required in each case, however, are matters which properly rest within the sound discretion of the Secretary.

■ In contrast to the Act's oblique reference to the Secretary's duty to investigate, the notice provisions of the statute are quite specific. Section 221(a) of the Trade Act provides in pertinent part:

(a)... Upon receipt of the petition, the Secretary *shall* promptly publish notice in the Federal Register that he has received the petition and initiated an investigation. [Emphasis added.]

Section 223(c) provides:

(c) Upon reaching his determination on a petition, the Secretary *shall* promptly publish a summary of the determination in the Federal Register together with his reasons for making such determination. [Emphasis added.]

The word "shall", used by Congress in both of these provisions, is ordinarily the language of command. *Escoe v. Zerbst*, 295 U.S. 490, 493, 55 S.Ct. 818, 819, 79 L.Ed. 1566 (1935). Its use, however, does not conclusively establish that a provision is mandatory. *Id.* The Supreme Court, in *French v. Edwards*, 80 U.S. (13 Wall.) 506, 20 L.Ed. 702 (1872), set forth the rule to be followed when a court must decide whether the procedural directives of a statute are mandatory or permissive. Speaking for the Court, Justice Field stated:

There are, undoubtedly, many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such, generally, are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. ... But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid.

*Id.*, at 511. See also *Erhardt v. Schroeder*, 155 U.S. 124, 15 S.Ct. 45, 39 L.Ed. 94 (1894); *Stein v. United States*, 1 CCPA 478, T.D. 31525 (1911); *Joanna Western Mills Co. v. United States* (*Unitron Import Corp.*, party-in-interest), 311 F.Supp. 1328, 64 Cust.Ct. 218, C.D. 3983 (1970).

Guided by this authority, the court has concluded that both notice provisions are mandatory. To disregard either would substantially impair important rights possessed by petitioners and other interested persons. Those filing a petition for certification and others whom the Secretary of Labor deems to be interested in the proceedings have ten days following the publication of a notice of receipt of a petition within which to request a public hearing at which they may be present, produce evidence, and be heard. Trade Act of 1974 § 221(b), 19 U.S.C. § 2271(b) (1976). A request for a hearing made before or after that time period may lawfully be disregarded by the Secretary, while a request made during that period must be granted. H.R.Rep., *supra*, at 118. By not publishing the required notice, the Secretary may effectively deny petitioners and other interested persons the opportunity to be heard.

Similarly, petitioners have sixty days from the date of publication of a notice of a final determination within which to seek judicial review of that determination. *Id.*, at § 284, 19 U.S.C. § 2395 (Supp IV 1980). Hence, a legal action commenced prior to publication of a final determination could be regarded as premature, while an action instituted more than sixty days after publication is barred by this statute of limitations. *Brunelle v. Donovan*, 3 CIT ——, Slip Op. 82–21 (March 23, 1982). *Cf. Tyler v. Donovan*, 3 CIT ——, Slip Op. 82–17, 535 F.Supp. 691 (1982).

In the procedural scheme contemplated by Congress, the notices which the Secretary of Labor is directed to publish give rise to and, after a time, extinguish important due process rights, i.e., the right to request an administrative hearing and the right to seek judicial review. Dispensing with the required notices jeopardizes these rights.

In *American Farm Lines v. Black Ball Freight Services*, 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970), which defendant cites in support of the notion that an agency may modify on a case by case basis

the procedural requirements of an act of Congress, the Supreme Court was concerned with an agency's discretion to modify its own rules. Significantly, the Supreme Court indicated that the *ad hoc* modification of agency rules would not be tolerated where the rules were intended "to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion." *Id.*, at 538, 90 S.Ct., at 1292. Rather, the Court approved of such modifications " 'when in a given case the ends of justice require it.' " *Id.*, at 539, 90 S.Ct., at 1292 (quoting *NLRB v. Monsanto Chemical Co.*, 8 Cir., 205 F.2d 763, 764 (1953)). The facts of the present case indicate that the Secretary's failure to conduct an investigation or publish the required notices did not serve the ends of justice, but only the administrative convenience of the agency.

■ When, as in the present case, agency action is taken without observance of procedure required by law, courts are empowered to set aside that action. Administrative Procedure Act § 706(2)(D), 5 U.S.C. § 706(2)(D) (1976). Nevertheless, as defendant correctly points out, courts will not set aside agency action unless the procedural errors complained of were prejudicial to the party seeking to have the action declared invalid. *John V. Carr & Son, Inc. v. United States*, 69 Cust.Ct. 78, 87, C.D. 4377, 347 F.Supp. 1390 (1972), *aff'd* 61 CCPA 52, C.A.D. 1118, 496 F.2d 1225 (1974).

■ The Secretary of Labor's failure to publish a notice and summary of his final determination in the Federal Register did not prejudice the rights of the plaintiffs in this action. Therefore, that error would not, by itself, compel the court to set aside the Secretary's determination. This cannot be said of the Secretary's failure to conduct an investigation, and his failure to publish notice of the receipt of a petition. These procedural errors had the effect of excluding from the administrative record facts which are directly relevant to the Secre-

tary's determination that plaintiffs are not eligible for trade adjustment benefits.

In denying their request for certification, the Secretary stated that plaintiffs were ineligible for benefits because they were "service workers" employed by a firm that did not produce an import-impacted article and that was not substantially owned or controlled by a firm that did produce such articles. In support of this conclusion, the Secretary invokes two judicial precedents, *Fortin v. Marshall*, 608 F.2d 525 (1st Cir. 1979), and *Pemberton v. Marshall*, 639 F.2d 798 (D.C.Cir.1981), which held that service workers were not ordinarily entitled to trade adjustment assistance benefits. Additionally, the Secretary cites an administrative decision which held that employees of a new car dealership are eligible for benefits only if the dealership is substantially owned or controlled by a parent firm which manufactures automobiles. *Jim Kraut Chevrolet, Inc.*, TA W–12835, 46 Fed.Reg. 52059 (1981).

In the *Fortin* case, the court carefully considered the use of the term "article" in the Trade Act of 1974 and concluded that services could not be regarded as an article so as to bring providers of services within the class of workers protected by the Act. Applying this interpretation of law to the facts of that case, the court held that airline employees who performed a variety of passenger, cargo, mechanical, administrative and managerial tasks were ineligible for benefits because they provided services to consumers rather than produced articles for consumers. In *Pemberton*, shipyard workers employed by Bethlehem Steel's Baltimore Yards were denied certification because an investigation by the Secretary of Labor disclosed that ninety-four percent of their work consisted of maintenance and repairs done to marine vessels owned by companies other than Bethlehem Steel. The court, relying on *Fortin*, affirmed the Secretary's determination because the majority of the work performed by those seeking certification was in the nature of services rather than manufacture.

Supporting the holdings in both of these cases is a clear exposition of the work performed by the individuals seeking certification of eligibility for trade adjustment assistance benefits. In each case the Secretary of Labor determined that the petitioners were service workers after making a factual inquiry into the nature of the tasks performed by each group. In the present case, the Secretary did not inquire either by investigation or hearing into the facts surrounding plaintiffs' petition. The administrative record is utterly devoid of any information which might indicate whether the employees of an automobile dealership are service workers as contended by the Secretary. The administrative decision upon which the Secretary relies, *Jim Kraut Chevrolet,* is similarly devoid of facts which would show the nature of the work performed by employees of a new car dealership.

In their brief, plaintiffs assert that automobile dealership employees perform numerous production tasks such as assembling and installing certain optional equipment, and giving new cars their final pre-sale cleaning and tune-up. Plaintiffs characterize these tasks as the final steps in the production process. Additionally, there is nothing on the face of plaintiffs' petition which reveals who owned and controlled Capital Chrysler Plymouth of Montgomery, Inc.[2]

In light of these assertions, the court cannot agree that an administrative investigation or hearing would have been futile in this case. The Secretary should have taken steps to determine who owned Capital Chrysler Plymouth of Montgomery, Inc. In the absence of a judicial precedent conclusively establishing that the employees of new car dealerships are service workers, a factual inquiry should also have been conducted into the nature of the work performed by the petitioners. Furthermore, since review in this court is confined to the administrative record, these factual inquiries must be made at the administrative level. Trade Act of 1974 § 284, 19 U.S.C. § 2395 (Supp IV 1980). The Secretary's failure to conduct an investigation, and his failure to provide plaintiffs with an opportunity to request a hearing, thus prejudiced plaintiffs' right to a fair consideration of their petition at the administrative level, as well as their right to meaningful judicial review.

Plainly without merit is defendant's contention that, because the Secretary's final determination is not likely to be changed by an investigation and hearing, plaintiffs were not prejudiced by the denial of their rights. A similar argument was made by the government in *Escoe v. Zerbst,* 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), when the Supreme Court was considering whether a probationer accused of breaking his probation had been prejudiced by being returned to prison without the hearing required by the applicable statute. Justice Cardozo responded:

> It is beside the point to argue, as the government does, that in this case a hearing, if given, is likely to be futile because the judge has made it plain how his discretion will be exercised .... The *non sequitur* is obvious. The judge is without the light whereby his discretion must be guided until a hearing, however summary, has been given ....

*Id.,* at 494, 55 S.Ct., at 820. "The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him *and opportunity to meet it.'* " *Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976) (quoting Frankfurter, J. concurring in *Joint Anti-Fascist Committee v. McGrath,* 341 U.S. 123, 171–72, 71 S.Ct. 624, 648–49, 95 L.Ed. 817 (1951)) (emphasis added).

In summary, it is the determination of the court that the Trade Act of 1974 re-

---

2. Jack Fointness, listed as a former official of Capital Chrysler Plymouth of Montgomery, is identified on the petition as the owner of Capital Chrysler Plymouth of *Charleston,* Inc.

quires the Secretary of Labor to conduct an investigation of each properly filed petition for certification of eligibility for trade adjustment assistance benefits; to publish notice that each petition has been received and an investigation initiated; and to publish a notice and summary of the final determination concerning each petition. The Secretary's failure to follow the required procedures in this case resulted in substantial prejudice to plaintiffs and, for that reason, this matter is remanded to the Secretary for further proceedings which are to be conducted in accordance with law.

The Secretary shall certify the record and report the results of the further proceedings to the court within sixty (60) days from the date of the entry of this order.