FORMER EMPLOYEES OF ZAPATA OFFSHORE CO., INC., PLAINTIFFS *v.* UNITED STATES, DEFENDANT

Court No. 86-11-01414

(Decided November 9, 1987)

*Ross & Hardies (John B. Pellegrini* and *Bret E. Suval)* for plaintiffs.

*Richard K. Willard,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, Department of Justice *(Elizabeth C. Seastrum); (Gary Bernstecker* and *Patrick Gilfillan),* Department of Labor, for defendant.

DiCARLO, *Judge:* Plaintiffs, former employees of Zapata Offshore Company, Inc. (Zapata Offshore), challenge the determination of the Secretary of Labor (Secretary) that workers at that company are ineligible for trade adjustment assistance under section 223 of the Trade Act of 1974 (Act), 19 U.S.C. § 2273 (1982).

After reviewing the administrative record and the arguments of the parties, the Court holds that the Secretary's denial of certification is supported by substantial evidence and is in accordance with law. The Secretary's determination is affirmed.

Plaintiffs were employed in drilling offshore oil wells for various oil companies and government contractors. Plaintiffs petitioned for adjustment assistance claiming that increased imports of foreign oil depressed the price of oil and thus reduced the demand for domestic offshore oil well drilling.

The Secretary denied plaintiffs' petition, finding that plaintiffs' company "does not produce an article as required for certification under section 222 of the Trade Act of 1974." *Summaries of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance,* 51 Fed. Reg. 40,087, 40,088 (Nov. 4, 1986). In denying plaintiffs' petition and other similar companies' petitions, the Secretary stated:

> The workers at these firms perform services for the oil and gas industry.
> The investigation revealed that the workers of the subject firms do not produce an article within the meaning of Section 223(3) of the Act. The Department of Labor has consistently determined that the performance of services does not constitute production of an article, as required by Section 222 of the Trade Act of 1974; and this determination has been upheld in the U.S. Court of Appeals. Therefore workers of the subject firms may be certified only if their separation was caused importantly by a reduced demand for their services from a parent firm, a firm otherwise related to the subject firms by ownership, or a firm related by control. In any case the reduction in demand for services must originate at a production facility whose workers independently meet the statutory criteria for certification and the reduction must directly relate to the product impacted by imports. These conditions have not been met for workers of the subject firms in this case.
> The services provided by the subject firms are furnished to unaffiliated companies that are not related to the subject firms by ownership or control.

R. Doc. 7.

The record reveals that plaintiffs' employer, Zapata Offshore, was affiliated with or related through common ownership to an oil company, Zapata Exploration, but that only 10% or less of plaintiffs' work was for this oil company. The Secretary requires that at least 25% of the service workers' activity be expended in service of the related company which produces the import-impacted article before

the separation of the service workers can be considered importantly caused by a reduced demand for their services from the related firm. *See Abbott* v. *Donovan,* 6 CIT 92 , 101, 570 F. Supp. 41, 49 (1983), *opinion after remand,* 7 CIT 323, 324–25, 588 F. Supp. 1438, 1439–40, *opinion after further remand,* 8 CIT 237, 241, 596 F. Supp. 472, 475 (1984). Plaintiffs do not challenge this portion of the Secretary's determination, and the Court will not further discuss it.

In reviewing a decision of the Secretary denying a petition for certification of eligibility for trade adjustment assistance benefits, the Court, pursuant to section 284 of the Trade Act of 1974, 19 U.S.C. § 2395(c) (1982), must determine whether the Secretary's decision is supported by substantial evidence contained in the administrative record and in accordance with law. *Woodrum* v. *Donovan,* 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983), *aff'd* 2 Fed. Cir. (T) 82, 737 F.2d 1575 (1984); *Former Employees of Asarco's Amarillo Copper Refinery* v. *United States,* 11 CIT 815, Slip Op. 87–119, at 4 (Nov. 2, 1987). Section 284(b) of the Act, 19 U.S.C. § 2395(b) (1982), provides that "[t]he findings of fact by the Secretary * * * if supported by substantial evidence, shall be conclusive" on the Court. There is also the "further requirement that the rulings made on the basis of those findings be in accordance with the statute and not be arbitrary or capricious, and for this purpose the law requires a showing of reasoned analysis." *Chapman* v. *Donovan,* 9 CIT 545, 547 (1985) (quoting *International Union, United Auto., Aerospace and Agricultural Implement Workers of Am.* v. *Marshall,* 584 F.2d 390, 396 n.26 (D.C. Cir. 1978)); *see* 19 U.S.C. § 2273(c) (1982).

The question presented to the Court is whether the Secretary's determination that plaintiffs were not engaged in producing oil, but only performed a service for those who did, is supported by substantial evidence and is according to law.

Plaintiffs argue as a threshold matter that the Secretary did not adequately investigate the nature of the work they performed before determining that they did not produce oil. Plaintiffs assert that the Secretary is legally required to make a detailed factual inquiry in this case because no judicial precedent establishes whether workers engaged in the drilling of oil wells are service workers rather than production workers, citing *Woodrum* v. *Donovan,* 4 CIT 46, 54, 544 F. Supp. 202, 208 ("In the absence of a judicial precedent conclusively establishing that the employees of new car dealerships are service workers, a factual inquiry should also have been conducted into the nature of the work performed by the petitioners"), *reh'g denied,* 4 CIT 130 (1982), *opinion after remand,* 5 CIT 191, 564 F. Supp. 826 (1983), *aff'd* 2 Fed. Cir. (T) 82, 737 F.2d 1575 (1984).

In *Woodrum,* the court remanded the Secretary's denial of adjustment assistance as to former employees of a new car dealership, because the Secretary neither conducted an investigation nor posted the proper notices so as to afford the plaintiffs an opportunity to re-

quest a hearing. The court found these procedural errors had the effect of excluding from the record relevant facts concerning the contention that the workers were employed by a firm which "produced" import-impacted articles. Since the record did not reveal what activities these employees performed, the court concluded that the administrative level was the proper place for the employees to prove that the process of producing new automobiles did not end until their tasks were done.

This action is different. Here the Secretary conducted an investigation and published the required notices. Although *Woodrum* requires the Secretary to investigate each properly filed petition, it also holds that the nature and extent of that investigation are matters "which properly rest within the sound discretion of the Secretary." *Woodrum,* 4 CIT at 51, 544 F. Supp. at 205; *see also Abbott,* 6 CIT at 97, 570 F. Supp. at 47.

Also unlike *Woodrum,* here the nature of plaintiffs' work, the drilling of offshore oil wells, is self-explanatory. Oil wells must be drilled before oil can be extracted from the ocean floor. The plaintiffs claim that the Secretary did not consider other aspects of their work necessary to complete the well after drilling, such as setting and cementing the production casing for support, inserting steel pipe or "tubing" through which oil will flow, and installing valves to control that flow of oil. But, these additional facts are irrelevant to the legal issue of whether employees of a company that drills a well, but does not own it or manage the extraction of oil from it, "produced" oil within the meaning of that term as used in section 222(3) of the Act, as amended, 19 U.S.C. § 2272(3) (Supp. III 1985). This situation is analogous to that in *Pemberton* v. *Marshall,* 639 F.2d 798, 801–02 (D.C. Cir. 1981), where the court held the Secretary did fulfill his statutory obligation to investigate since the important facts as to the nature of the work done at the facility and its relation to the production of the article were disclosed and the other information not disclosed was irrelevant to the determination to be made.

Plaintiffs' work raises a question as to which steps in the chain of production fall within the meaning of the term "produced" as used in section 222(3) of the worker adjustment provisions of the Act. While several cases have found that activities employees perform after an article is manufactured do not constitute production of that article, *see, e.g., Pemberton,* 639 F.2d at 799 (repair and maintenance of ships); *Hedgpeth* v. *Donovan,* 6 CIT 288 (1983) (warranty work on automobiles); *Woodrum,* 5 CIT at 191, 564 F. Supp. at 826 (inspection and servicing of automobiles), this action involves activities employees perform before the article is manufactured or, in this case, obtained.

Cases which might have assessed the performance of activities prior to manufacture never reached such issue because the employees "produced" only a part of the finished article and the part creat-

ed was found not to be "like or directly competitive" with the finished import-impacted article as required by section 222(3) of the Act. *See, e.g., Morristown Magnavox Former Employees* v. *Marshall,* 671 F.2d 194 (6th Cir. 1982) *cert. denied,* 459 U.S. 1041 (1982) (component parts of television sets); *ACTWU Local 1627, AFL–CIO* v. *Donovan,* 7 CIT 212, 587 F. Supp. 74 (1984) (automotive batteries for cars); *Gropper* v. *Donovan,* 6 CIT 103, 569 F. Supp. 883 (1983) (fabric for knit fabric garments). These cases are of little guidance.

Resolution of the issue plaintiffs present depends upon the interpretation of the term "produced" in section 222(3) of the Act. The starting point for interpreting a statute is the language of the statute itself. *Consumer Product Safety Comm'n* v. *GTE Sylvania,* 447 U.S. 102, 108 (1980); *Southeastern Community College* v. *Davis,* 442 U.S. 397, 405 (1979). The statute is silent as to when or by whom a natural resource is produced and does not define the term "produced" used in section 222(3) of the Act.

The statutory scheme offers little guidance. One purpose of the Act is "to provide adequate procedures to safeguard American industry and labor against unfair or injurious import competition, and to assist industries, firm[s], workers, and communities to adjust to changes in international trade flows." 19 U.S.C. § 2102(4) (1982). But the Act contains many eligibility requirements or limitations to adjustment assistance, including Section 222(3) which requires that the employees' firm or an appropriate subdivision "produced" an import-impacted article.

The legislative history of the trade adjustment assistance provisions of the Act is also silent as to what Congress intended with respect to workers in the oil industry and contains no discussion as to how to interpret the term "produced."

The Court must accord substantial weight to the interpretation put on the statute by the agency charged with its administration. *Kelley* v. *Secretary, United States Dep't of Labor,* 812 F.2d 1378, 1380 (Fed. Cir. 1987) (citing *Zenith Radio Corp.* v. *United States,* 437 U.S. 443, 450 (1978); *American Lamb Co.* v. *United States,* 785 F.2d 994, 1001 (Fed. Cir. 1986)). A court can "reject an agency interpretation that contravenes clearly discernible legislative intent," but "its role when that intent is not contravened is to determine whether the agency's interpretation is 'sufficiently reasonable.' " *Kelley,* 812 F.2d at 1380 (quoting *American Lamb,* 785 F.2d at 1001). "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Kelley,* 812 F.2d at 1380 (quoting *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, Inc.* 467 U.S. 837, 844 (1984); *United States* v. *Federal Ins. Co.,* 805 F.2d 1012, 1017 (Fed. Cir. 1986) *cert. denied,* 107 S. Ct. 2179 (1987)).

The Secretary's interpretation of section 222(3) of the Act is that the term "produced" does not embrace the performance of services. Implicit in the Secretary's position in this action is a conclusion that, as for oil, production does not include preparation prior to extraction of the oil, such as drilling the well, regardless of the necessity of such preparation. Since the Secretary does not view drilling of the well as production of oil, it is reasoned that drilling is a service to the oil and gas industry which produces the oil (presumably those companies which own the wells and manage the extraction of the oil).

Plaintiffs argue that the Secretary's interpretation of the term "produced" used in section 222(3) of the Act is too narrow and thus contravenes the intent of Congress. To support this position, plaintiffs cite cases involving the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., asserting that under that law employees of concerns engaged in the drilling of oil wells were found to have been engaged in the production of goods. Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88 (1942); Sealy v. Mitchell, 249 F.2d 327 (5th Cir. 1957). Plaintiffs urge a broader interpretation of "produced" is necessary to promote the remedial purpose of the trade adjustment assistance provisions of the Act.

Resort to cases interpreting the Fair Labor Standards Act is not helpful. The trade adjustment assistance provisions of the Trade Act of 1974 are "vastly different in purposes and goals" from the Fair Labor Standards Act. Woodrum, 5 CIT at 198, 564 F. Supp. at 832.

The Secretary's interpretation, furthermore, does not violate the remedial purpose of the Act. "While it is true that the assistance provisions are to be construed liberally * * * the parameters cannot be ignored. The benefits of the Act are not universal and some hardships may result." Pemberton, 639 F.2d at 800 (citation omitted).

The Court does not discern any legislative intent which would permit it to reject the Secretary's interpretation. The Court must still assess, however, if that interpretation is reasonable.

If Congress considered when or by whom a natural resource such as oil is produced, it must have recognized that such decision is inherently discretionary. It could be argued that such resources are not produced by man at all, but are created through geologic processes extending over thousands of years. In assessing human involvement in oil production, the Secretary found drilling of an oil well to be a service to the oil and gas industry, resulting in employees engaged in drilling to be viewed as not having "produced" oil within the meaning of that term as used in section 222(3) of the Act.

The Secretary could have considered workers engaged in drilling to be at such a level in the general process of oil extraction that their activities would be viewed as having "produced" oil within the meaning of section 222(3) of the Act. That this section is susceptible to more than one interpretation, however, does not make the inter-

pretation adopted by the Secretary unreasonable. In evaluating the Secretary's interpretation, the Court "need not find that its [the Secretary's] construction is the only reasonable one, or even that it is the result we [the court] would have reached had the question arisen in the first instance in judicial proceedings." *Paden* v. *United States Dept. of Labor,* 562 F.2d 470, 473 (7th Cir. 1977) (quoting *Unemployment Compensation Comm'n of Alaska* v. *Aragon,* 329 U.S. 143, 153 (1946)). The Secretary's interpretation of the term "produced" in section 222(3) of the Act as it relates to these workers in the oil industry is sufficiently reasonable to preclude the Court from substituting its judgment for that of the Secretary.

Congress sought to provide trade adjustment assistance only to those workers that "produced" an import-impacted article. The Secretary has found that plaintiffs have not "produced" an import-impacted article within the meaning of Section 222(3) of the Act. The Secretary's determination that plaintiffs are therefore ineligible for adjustment assistance is supported by substantial evidence and is according to law.

The Secretary's denial of certification for trade adjustment benefits under the Act is affirmed. The action is dismissed. Judgment will be entered accordingly.