FORMER EMPLOYEES OF BAKER PERKINS, PLAINTIFFS *v.* UNITED STATES, DEFENDANT

Court No. 89-02-00083

(Decided March 1, 1990)

*Ervin M. Laurenz, James Fortenberry,* and *Melvin Reikowsky, pro se,* for plaintiffs.

*Stuart M. Gerson,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch (*Velta A. Melnbrencis*), Civil Division, United States Department of Justice and *Gary Bernstecker,* United States Department of Labor, for defendant.

## OPINION

RESTANI, *Judge:* This matter is before the court following remand. Plaintiffs continue to challenge denial by the Secretary of Labor of eligibility for Trade Adjustment Assistance benefits pursuant to 19 U.S.C. §§ 2271–2395 (1988).[1]

Following a merger in mid 1987 of Baker Perkins, Inc. (Baker Perkins) and APV Chemical Machinery, Inc. (APV), Baker Perkins's Saginaw, Michigan, plant was partially closed. Shortly thereafter, plaintiffs were separated from Baker Perkins.

Plaintiffs allege that their separation was caused at least in part by increases in imports of the products manufactured in the Saginaw

---

[1] In order to certify a group of workers as eligible for adjustment assistance, Labor must determine that the three criteria in Section 222 of the 1974 Trade Act are met. These criteria are:

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm has become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272(a) (1988).

For the purposes of part (3) of this statute both at the time the petition was brought on August 24, 1988, and presently, " 'contributed importantly' means a cause which is important but not necessarily more important than any other cause." 19 U.S.C. § 2272(b)(1) (1988).

plant. The imports are allegedly imported by Baker Perkins itself for resale. Defendant alleges that nearly all of the Saginaw plant production was transferred to APV's Wisconsin plant after the merger. It also asserts that, although Baker Perkins imported some products for partial assembly and resale, the allegedly competing imported products were not produced at Saginaw during the relevant time period, that is, 1986–1988.

In *Former Employees of Baker Perkins* v. *United States,* 13 CIT 632, 635, No. 89–107, Slip Op. at 6 (July 19, 1989) (*Baker Perkins I*),[2] the court found that Labor's telephone customer survey "was incapable of detecting the situation complained of by plaintiffs, namely, that machinery sold by the subject firm and labelled with domestic nameplates was actually produced abroad." *Baker Perkins I,* 13 CIT 635, slip. op. at 7. The court also found that there was insufficient evidence in the record demonstrating that the worker separations at issue were caused by a transfer of domestic production rather than by factors triggering eligibility. *Id.* at 636, slip. op. at 8–9.

In light of these findings the court remanded the case to Labor with instructions that it investigate further. Labor was to ascertain what type of production had been transferred from the Baker Perkins plant to the new APV plant in Wisconsin or elsewhere and what type of production remained behind in Saginaw during the period of investigation. *Id.* at 636, slip. op. at 9. Labor was directed to determine whether the Saginaw plant would have remained in operation in the absence of the transfer. *Id.* The court also required Labor to provide plaintiffs with the opportunity to comment on what machinery, if any, was produced at the plant during the investigation period. *Id.* at 636, slip. op. at 9–10.

As indicated, following reconsideration Labor again arrived at a negative determination as to eligibility. *See APV Chemical Machinery, Saginaw, MI; Notice of Negative Determination on Reconsideration,* 54 Fed. Reg. 47,147 (Nov. 9, 1989). Labor asserted that there was no basis for certification because no article or portion thereof which could have been affected by imports was produced at the plant during the period investigated. *Id.* Labor also noted that the "findings on remand reveal increasing production and sales of chemical machinery at Lake Mills and a corresponding decrease in sales and production of chemical machinery at Saginaw." *Id.*

Plaintiffs contest these findings and seek reversal of the negative determination denying them adjustment assistance benefits. Plaintiffs maintain, in essence, that Labor's investigation is rife with contradictions; that Labor's sources are unreliable; that Labor should have concluded that the machinery at issue was indeed imported; that Labor acted in bad faith by failing to engage in person to person meetings or conference calls; and that Labor should have looked into Baker Perkins's employee work record and shipping documents to verify statements made by Baker Perkins's management.

---

[2] A detailed description of the background of this action may be found in *Baker Perkins I.*

The *ex parte* nature of the certification process and the program's remedial purpose obligate Labor to conduct investigations with the workers' interests in mind. *Stidham* v. *Labor,* 11 CIT 548, 551, 669 F. Supp. 432, 435 (1987); *Abbott* v. *Donovan,* 7 CIT 323, 327–28, 588 F. Supp. 1438, 1442 (1984); *Local 167, Int'l Molders and Allied Workers' Union, AFL–CIO* v. *Marshall,* 643 F.2d 26, 31 (1st Cir. 1981). Just as plaintiffs have a right to meaningful judicial review, plaintiffs have a right to a fair consideration of their claims by Labor. *Woodrum* v. *Donovan,* 4 CIT 46, 54, 544 F. Supp. 202, 208 (1982). When reviewing a determination by the Secretary in Trade Adjustment Assistance cases of this type under 19 U.S.C. § 2395(b), the court addresses two questions: (1) was the evidence submitted to and collected by the Secretary evaluated fairly and properly and, if so, (2) in a case involving the third eligibility factor, was that evidence substantial enough to support the Secretary's finding that increases in directly competitive imports did not "contribute importantly" to the separation of the group of workers petitioning for eligibility. *See generally, United Elec., Radio & Machine Workers of America* v. *Brock,* No. 90–19 (CIT Feb. 27, 1990).

As to the court's first inquiry, the record before the court demonstrates that Labor evaluated all factors fairly and properly. Labor's inquiry of Baker Perkins's personnel focused on the nature of the transfer of machine production to another plant and on the exact quantity and nature of machinery produced and imported over the years under investigation. This information only could have been in Baker Perkins's possession. Baker Perkins's management personnel were the only ones who had knowledge of the origin, number, and destination of the machinery produced at the plant.

Plaintiffs claim to the contrary, the record reveals no evidence that either Baker Perkins's personnel or Labor acted in bad faith to deny plaintiffs access to relevant information. Plaintiffs did not accept an opportunity for a telephone conference. Plaintiffs, however, did submit written information on plant operations and production and Labor obtained responses from company officials. The company replies were not general. Rather, they were detailed and appear to be consistent over time. Therefore, there does not appear to be a need to require Labor to peruse through Baker Perkins's shipping documents or for this court to remand this matter for examination of the additional material submitted by plaintiffs after the record was closed. The documents in the record do not indicate that Baker Perkins's personnel misrepresented to Labor what their company produced during the investigatory period or the origin of the elements of production.[3]

---

[3] Plaintiffs submitted additional newspaper articles and videotape of certain television news coverage relating to activities at the Saginaw plant. Plaintiffs also submitted copies of investigatory reports obtained from a Department of Navy inquiry into activities at Baker Perkins prior to its merger with APV. None of these materials were a part of the administrative record, to which the court generally must limit its review under 19 U.S.C. § 2395(b). *See Woodrum* v. *Donovan,* 4 CIT 46, 54, 544 F. Supp. 202, 208 (1982). Nonetheless, because the court may venture outside the record in a limited number of circumstances, the court did review the materials. The submissions do not reveal evidence of any deception that would be relevant to this matter. Rather, they contain *allegations* of improper origin marking. *See also infra,* note 7.

As to the court's second inquiry, the record following remand reveals that the Secretary's decision is supported by substantial evidence. The administrative record shows that the machinery at issue was produced for the aerospace, chemical, and pharmaceutical industries for the mixing and refinement of a variety of chemical ingredients. *See* Confidential Record (CR) at 7 & 19. In addition, some Baker Perkins machinery was sold to the defense industry. *Id.* The record also reflects that Baker Perkins's customers changed with regularity because the heavy machinery needed to fulfill the customers' requirements usually was not bought on a regular basis. CR at 26.[4] The basic machinery produced by Baker Perkins and APV includes pusher centrifuges for the separation of solids from liquids, Confidential Supplemental Record (CSR) at 20; vertical mixers, CSR at 25; podbielnak centrifugal contractors for extraction processes which involve the transfer of soluble products from one liquid medium to another, CSR at 29–30; and continuous mixers and extruders which are designed specifically for the mixing and extrusion of highly volatile chemicals. CSR at 41–42. Also mentioned in the record are pelletizers,[5] batch mixers and multiple purpose mixers. CSR at 8, 10 & 12.

The record reflects that correlative with the decline in production at the Saginaw plant, production at the Lake Mills plant increased. *See* CSR at 5, 6, & 10–12. The documents reveal an attempt to consolidate manufacture and save expenses following the Baker Perkins – APV merger by transferring production to the Lake Mills plant in Wisconsin. *See* CSR at 1.

Baker Perkins's personnel did confirm plaintiffs' allegations of importation of some machinery and machine parts. *Id.* at 2. *See also* CR at 93. The imports consisted of batch mixers, multiple purpose mixers, and twin screw extruders. The record reveals that batch mixers were not produced at the Saginaw plant during the investigatory period, although some U.S. parts may have been added to the basic imported machine. Similarly, motors and electrical parts were added to imported multiple purposes mixers at the plant during the investigatory period. Apparently, basic production had switched to overseas facilities in the late seventies and early eighties. Addition of U.S. parts was not transferred to overseas facilities. Twin screw extruders were imported, but the record reveals that the plant's mixer/extruder production which could be said to be in this category was transferred domestically.[6] The replacement of name plates on the imported materials, which plaintiffs interpret as an attempt by Baker Perkins's management to conceal the amount of machines imported, apparently was accepted by the Secretary as a reflection of completion of the machines in Saginaw for use in

---

[4] This probably makes a customer survey less useful than in an ordinary case.

[5] Although alleged to be imported, the record reveals that pelletizers were domestically manufactured.

[6] Generally, the 1988 wind down production reveals no eligibility triggering events.

the American market. The record does not contradict the Secretary's conclusion.[7]

The evidence collected following remand was substantial enough to support the conclusion that Labor did not err in finding that increasing imports did not "contribute importantly" to the separation of the particular workers petitioning for benefits. The record upon remand supports the conclusion that the separations were a result of the transfer of production and assembly (including assembly of imported products) from one domestic plant to the next; rather than a result of increased importation of machinery or parts during the investigatory period. *See* CSR at 1, 6, 10 & 12. Transfer of production to foreign subsidiaries, which occurred in the early 1980's, was not sufficiently proximate to the time of separation to trigger eligibility.

Accordingly, the decision to deny eligibility for trade adjustment assistance benefits is affirmed and plaintiffs' action is dismissed.

---

[7]This is not a "marking case" or a case charging violation of the "Buy American Act." Thus, the court need not examine here whether products were labeled appropriately. The court's concern for the purposes of this case is whether Labor made its decision on the basis of a reasonable degree of investigation into the level of imports involved. The evidence plaintiffs submitted and the company statements do not conflict in any significant way as to the volume and type of imports affecting the Saginaw plant.