FORMER EMPLOYEES OF SHOT POINT SERVICES, PLAINTIFFS *v.*
UNITED STATES, DEFENDANT

Court No. 91–05–00378

(Decided June 3, 1993)

*Duane Jendro pro se.*
*Stuart E. Schiffer,* Acting Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Vanessa P. Sciarra);* and U.S. Department of Labor *(Michelle Curran),* of counsel, for the defendant.

## MEMORANDUM

AQUILINO, *Judge:* This action contests denial by the U.S. Department of Labor of certification of eligibility to apply for adjustment assistance under the Trade Act of 1974, as amended, *sub nom. Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance, Negative Determinations, Shot Point Services, Houston, TX,* 56 Fed.Reg. 14,955 (April 12, 1991), and *Shot Point Services, Inc., Houston, TX; Dismissal of Application for Reconsideration,* 56 Fed.Reg. 21,176 (May 7, 1991).

## I

The record developed in conjunction with those proceedings contains a petition for such assistance signed by three individuals, identifying themselves as members of a "seismograph crew (oil exploration)" and describing their work as:

> Oil exploration: a[c]quist[i]tion of geological data using computer and analog recording devices to locate petroleum bearing geologic formations. This information[,] once processed, is used to locate sites for oil drilling and production value of information depending on size of deposits and acces[s]ibility[.][1]

The petition alleged that:

> Lower imported oil prices and increased imports have narrowed profit margins, making domestic oil exploration and production compan[ie]s * * * cut down crew sizes and numbers of crews themselves[.] Shot Point Services had 4 crews in 1988[.] As of Jan. 1, 1991 we are down to two[.][2]

This petition caused the Office of Trade Adjustment Assistance, Employment and Training Administration of the Department of Labor to

---

[1] Public Record ("PubRec"), p. 2 (handwritten initial capital letters lowered for ease in reading).
[2] *Id.*

investigate eligibility to apply for certification pursuant to 19 U.S.C. ch. 12, part 2, subpart A. Section 2272 thereof provides:

## Group eligibility requirements; agricultural workers; oil and natural gas industry

(a) The Secretary shall certify a group of workers * * * as eligible to apply for adjustment assistance under this part if he determines—

>> (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

>> (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

>> (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

(b) For purposes of subsection (a)(3) of this section—

\* \* \* \* \* \* \*

>> (2)(A) Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil or natural gas shall be considered to be a firm producing oil or natural gas.

>> (B) Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil or natural gas, or otherwise produces oil or natural gas, shall be considered to be producing articles directly competitive with imports of oil and with imports of natural gas.

After investigating, the Department decided that the criteria of subparagraph (a)(3) for assistance had not been met upon the stated rationale that the workers performed manual labor at drilling sites and:

>> Workers are not separately identifiable by product.

>> * * * The preponderance of activities performed by workers of Shot [P]oint Services, Inc. are not related to oil and gas drilling and exploration; therefore, workers of the firm are not eligible for provisions of the Omnibus Trade and Competitiveness Act of 1988.

>> The investigation revealed that the workers of Shot Point Services, Inc., Houston, Texas do not produce an article within the meaning of Section 223(3) of the Act. The Department of Labor has consistently determined that the performance of services does not constitute production of an article, as required by Section 222 of the Trade Act of 1974, and this determination has been upheld in the U.S. Court of Appeals. Therefore, workers of the subject firm may be certified only if their separation was caused importantly by a reduced demand for their services from a parent firm, a firm otherwise related to the subject firm by ownership, or a firm related by control. In any case, the reduction in demand for services must originate at a production facility whose workers independently

meet the statutory criteria for certification and the reduction must directly relate to the product impacted by imports. These conditions have not been met for workers at the subject firm.[3]

The Department therefore denied eligibility. Petitioner Jendro requested reconsideration, stating:

* * * Contrary to the[ ] investigation, we don't perform just manual labor for an oil field service company. We are a full time oil exploration and seismograph crew exclusively; these are the crews' main and only objectives.

  *　　　*　　　*　　　*　　　*　　　*　　　*

* * * There are a couple of other contract service companies that perform the same exact services that we do for Shell Western and they are currently on your list for Trade Adjustment Assistance.[4]

The Department dismissed this request "[b]ecause sufficient evidence ha[d] not been furnished to warrant reconsideration pursuant to 29 CFR 90.18(c)", stating that

Shot Point Services supplies crews that perform brush cutting, clean up and other labor on a short term basis at sites where seismic exploratory activity is taking place. Pre-exploration activities (brush cutting) and post-exploration activities (clean up) would not meet the provisions of Section 1421(a)(B) of the Omnibus Trade and Competitiveness Act (OTCA) of 1988 for workers engaged in exploration and drilling for oil or natural gas.

The Department's denial for the Shot Point workers was based on the fact that the workers do not produce an article within the meaning of the Trade Act. * * *

Investigation findings also show that although the turnover is substantial at Shot Point, total employment did not decline in the period relevant to the petition. Workers often quit when work shifts to a new location and workers are asked to move.

Further, the certification of workers at Exploration Employment Service would not provide a basis for certifying workers at Shot Point. Workers at Exploration Employment Service met the provisions of Section 1421(a)(B) of the OTCA of 1988.[5]

In other words, upon reconsideration by the Department, not only were the criteria of 19 U.S.C. § 2272(a)(3) not met but also those of subsection (a)(1). This action ensued.

## II

After joinder of issue on the complaint herein, the defendant moved for (and was granted) remand

in order to conduct a further investigation. A remand order would allow the Secretary to reconsider the evidence in the administrative record, seek additional data if necessary, and make a redetermina-

---

[3] PubRec, pp. 14–15.

[4] *Id.* at 22.

[5] *Id.* at 23.

tion as to whether plaintiffs are eligible for certification for trade adjustment assistance benefits.[6]

The Department thereafter issued *Shot Point Services, Inc., Houston, TX; Negative Determination on Reconsideration,* 57 Fed.Reg. 6,528 (Feb. 25, 1992), based upon the following:

New findings on remand show that Shot Point is an independent firm which provides the service of contract labor to firms in the oil and gas industry. The findings show that Shot Point supervises, hires and fires its employees as conditions seem fit and is not owned or under the control of any of its other customers.

Additional findings on remand reveal that Shell does its own seismic work and only contracts for general labor. In 1991, Shot Point provided this general labor to assist Shell's seismic crews by providing primarily brush and clean-up men, landsmen and secretarial personnel. These contract services for general labor do not provide a basis for meeting the criteria for certification under the Trade Act of 1974 or its subsequent amendments.

\*  \*  \*  \*  \*  \*  \*

The findings show that a typical Shell Western seismic crew consists of about 50 workers, 30 of which would be Shell employees and the remainder contract laborers. The contract labor supplied by Shot Point are not seismic crews, in themselves, but constitute the contract labor portion supporting Shell's seismic crews. The contract labor portion of a seismic crew is under the direct control of the contractor, in this case, Shot Point and not Shell.

\*  \*  \*  \*  \*  \*  \*

The findings also show that the Exploration Employment Service (TA–W–21,179) contracted seismic services to its customers as opposed to Shot Point's providing only support to a customer's (Shell Western) seismic crews gathering data.[7]

Plaintiff Jendro's response to the foregoing states, in part:

Approximately in the middle of November of 1990 our crew was informed that our main office was to be moved from Big Rapids, Michigan, to Tomball, Texas. \* \* \* Shot Point, who contracts to Shell, could either move their families to the new office or lose their job. They could continue to work for Shot Point if they wanted to, but the people on the crew would have to find their own transportation from Big Rapids to the job site.

\*  \*  \*  \*  \*  \*  \*

The reason for filing [the petition for assistance was,] \* \* \* if a crew is separated totally or partially or threatened to begin, that an investigation can proceed. \* \* \*

\*  \*  \*  \*  \*  \*  \*

---

[6] Defendant's Motion for Remand, p. 1.

[7] Supplemental Record ("SuppRec"), pp. 11–12.

On March the 22nd the Shell Personnel called us all together to notify us that there would be a big layoff consisting of approximately 50 people or 50% of the crew with the crew keeping only a few Shot Point people and the rest of them Shell. * * * Therefore I requested Administrative reconsideration of the department's negative determination and on April the 26th I received a letter of denial.

Basically I wanted them to reinvestigate because I wasn't sure if they knew about the layoff which occurred on March the 22nd, which I thought should make a difference. Also the main point of my letter stated the fact about how E.E.S.I. who contracts also to Shell Oil, and who had a few years previous applied for T.A.A. and had gotten it. * * * I think that they failed to take in[to] consideration * * * the professional work that we perform * * *.

    *        *        *        *        *        *        *

Anyway I don't think that T.A.A. really bothered to investigate after my appeal where they would have discovered the layoff which I feel could make a difference.

    *        *        *        *        *        *        *

So my main beef with T.A.A. * * * is the fact that both contractors [Shot Point and E.E.S.I.] work for the same oil company (Shell). One contractor was certified previously and the other was not. * * *

    *        *        *        *        *        *        *

Also [the report] says that employees are supervised at exploration sites by Shell * * * [but] goes on to say that activities performed by workers of Shot Point are not related to oil and gas drilling and exploration, therefore the crew does not qualify. Which leads to another contradiction according to these two paragraphs. In other words how can your work be unrelated to oil and gas exploration * * * when you are being supervised at exploration sites * * *.[8]

## A

The investigation of these points was conducted in accordance with 1988 amendments to 19 U.S.C. § 2272. Prior to those amendments, this Court of International Trade had affirmed denial of certification of eligibility to apply for trade adjustment assistance on the part of workers employed by an independent drilling firm which did not produce an article within the meaning of the statute. *See Former Employees of Zapata Offshore Co. v. United States,* 11 CIT 841 (1987).

In apparent recognition of such cases, Congress amended the statute to extend benefits to independent workers. *See* 19 U.S.C. § 2272(b)(2), *supra.* The legislative history indicates

firms engaged in exploration or drilling [were considered] to include, for example, independent drillers, pumpers, seismic and geophysical crews, geological crews, and mud companies.

---

[8] Shot Point Brief, pp. 2–4.

H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 694 (1988). The court later construed the amendment, in the light of such legislative history, not to cover workers who provided a service which was related to the domestic oil industry but who were not directly involved in locating and extracting petroleum from the earth. *See Former Employees of Permian Corp. v. United States,* 13 CIT 673, 675, 718 F.Supp. 1549, 1551 (1989).

Relying on *Permian,* the defendant argues that the plaintiffs are not eligible for assistance under the statute because they were assigned to provide secretarial assistance and general non-technical labor to Shell and not to engage in that company's actual exploration activities.

In reviewing the Department's findings and conclusions, this court must determine whether they are supported by substantial evidence on the record. *See* 19 U.S.C. § 2395(b). The Department is required to conduct a factual inquiry into the nature of the work performed by the petitioners to determine whether it amounted to that of service or that of production. *See Former Employees of Zapata Offshore Co. v. United States,* 11 CIT at 843, citing *Woodrum v. Donovan,* 4 CIT 46, 54, 544 F.Supp. 202, 208, *reh'g denied,* 4 CIT 130 (1982), *opinion after remand,* 5 CIT 191, 564 F.Supp. 826 (1983), *aff'd sub nom. Woodrum v. United States,* 737 F.2d 1575 (Fed.Cir. 1984). However, the nature and extent of the investigation rests largely within the Secretary's discretion. *See id.,* 4 CIT at 51, 544 F.Supp. at 205.

As for interpreting the statute, the starting point is its plain language. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980); *Southeastern Community College v. Davis,* 442 U.S. 397, 405 (1979). And the court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Kelley v. Secretary, U.S. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir. 1987), quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, *reh'g denied,* 468 U.S. 1227 (1984), and citing *United States v. Federal Ins. Co.,* 805 F.2d 1012, 1017 (Fed.Cir. 1986), *cert. denied,* 481 U.S. 1048 (1987).

This court has reviewed the confidential version of the supplemental administrative record, which shows that Shot Point personnel were indeed assigned duties related to seismic activity[9] but also that Shell employed its own personnel to carry out that actual activity, contracting out to Shot Point for secretaries, "permit men" and general laborers.[10] In short, the Department's determination(s) are supported by substantial evidence. And, whereas the statute does not explicitly preclude workers in plaintiffs' shoes, this court cannot conclude that the Secretary's interpretation of the statute was not reasonable. The court "need not find that [the] construction is the only reasonable one, or even that it is the result [the court] would have reached had the question arisen in the first instance in judicial proceedings." *Unemployment Compensa-*

---

[9] *See* SuppRec, pp. 5–6.

[10] *See id.* at 2, 7–8.

*tion Comm'n of Alaska v. Aragon,* 329 U.S. 143, 153 (1946). And, "[w]hile it is true that the assistance provisions are to be construed liberally * * *, the parameters cannot be ignored. The benefits of the Act are not universal and some hardships may result." *Pemberton v. Marshall,* 639 F.2d 798, 800 (D.C.Cir. 1981) (citations omitted). Accordingly, the Department's determination(s) must be affirmed and judgment entered in defendant's favor.